**In re ATLANTA RETAIL, INC., f/k/a Wolf Camera, Inc., et al. Debtors.**

**Atlanta Retail, Inc., f/k/a Wolf Camera, Inc. Atlanta Retail Subsidiary, LLC f/k/a WolfXpress.com, LLC, Atlanta Retail, L/P/ f/k/a Texas Photo Finish, L.P., and Atlanta Retail Partner, Inc., f/k/a Fox Photo Partner, Inc. and Wachovia Bank, National Association, Plaintiffs,**

v.

**Eastman Kodak Company, Defendant.**

Bankruptcy Nos. 01–83470, 01–83472, 01–83474, 01–83475. Adversary No. 02–6454.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 22, 2003.

See also 294 B.R. 186.

Jeffrey W. Kelley, Powell, Goldstein, Frazier & Murphy LLP, Mary Grace Diehl, Troutman Sanders LLP, Atlanta, GA, Jay Teitelbaum, Morgan, Lewis and Bockius, LLP, New York City, for Plaintiffs.

Daniel W. Sklar, Nixon Peabody LLP, Manchester, NH, Kenneth A. Shapiro, Mitchell & Shapiro, Atlanta, GA, for Defendant.

## ORDER

COLEMAN RAY MULLINS,
Bankruptcy Judge.

**THIS MATTER** is before the Court on the Motion for Summary Judgment on the Complaint for Permanent Injunction Against Eastman Kodak Company (the "Motion"). The Motion was filed by Atlanta Retail, Inc., f/k/a Wolf Camera, Inc., et al. ("Wolf Camera" or the "Debtors") and Wachovia Bank, f/k/a First Union National Bank ("Wachovia" and together with the Debtors, the "Plaintiffs" and individually, each a "Plaintiff"). The Plaintiffs seek a determination that the claims asserted by Eastman Kodak ("Kodak" or the "Defendant") in the United States District Court for the Western District of New York (the "New York Action") are equitably barred because of prior proceedings in the main bankruptcy case.

After reviewing the entire record and relevant case law, the Court concludes that the Plaintiffs are entitled to summary judgment.

### *FINDINGS OF FACT* [1]

Wachovia and Kodak held substantial pre-petition, secured claims against Wolf Camera. The Second Amended and Restated Loan and Purchase Agreement, executed by Kodak and Wolf Camera in March of 2000 is of particular significance

in this matter. Pursuant to the aforementioned agreement, Kodak agreed to make a $30,000,000 loan to Wolf Camera, subordinated to Wachovia's loans. This loan was in addition to the approximate $9,000,000 in subordinate loans Kodak had previously extended to Wolf Camera. As a condition precedent to disbursement of the $30,000,000 loan, Kodak had to receive certain consents from Wachovia. Prior to receipt of such consents, Kodak disbursed the $30,000,000 to Wolf Camera. Subsequently, Wolf Camera transferred all or substantially all of the loan proceeds to the Pre–Petition Lenders to pay down its indebtedness.[2]

On June 21, 2001, Wolf Camera and its affiliates filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). As of the petition date, as evidenced by the proofs of claim, the Debtors were indebted to the Pre–Petition Lenders in the approximate principal amount of $77,600,000. Attached to the proofs of claim were documents evidencing the relative priority of the claims and liens of Kodak and Wachovia. Specifically, Wachovia attached the 1998 Subordination and Intercreditor Agreements,[3] which evidences the subordinate status of Kodak's claims and liens against the assets of the

1. Although the parties did not stipulate to the facts of this case, based upon the Defendant's Response to the Plaintiffs' Statement of Undisputed Facts and Counter–Statement of Undisputed Facts, the relevant facts are not disputed. Furthermore, many of the facts are based upon prior proceedings held in this Court, of which, the Court may take judicial notice.

2. The Pre–Petition Lenders are inclusive of several financial institutions, with Wachovia acting as the administrative agent.

3. The 1998 Subordination Agreement provided, among other things, that Kodak's claims

and liens arising from Wolf Camera's indebtedness to Kodak are subordinate in all respects, including the right of payment, to prior payment in full of all obligations of Wolf Camera to Wachovia and the Pre–Petition Secured Lenders, up to the amount of $120,000,000. The 1998 Intercreditor Agreement provided, among other things, that Kodak and Wachovia would use their best efforts to give the other notice of its actions which may significantly affect the other with regard to the ability of Wolf Camera to meet its obligations.

Debtors to the claims and liens of Wachovia.

Pursuant to an emergency motion dated June 21, 2001 (the "DIP Motion"), the Debtors sought Court authorization to, among other things: 1) obtain DIP (debtor-in-possession) financing up to the principal amount of $10,000,000 from Wachovia and other financial institutions (the "DIP Lenders"); [4] 2) utilize cash collateral of the Pre–Petition Lenders; and 3) provide adequate protection to the Pre–Petition Lenders. The Official Committee of Unsecured Creditors (the "Committee") objected to the DIP Motion. Kodak did not file an objection to the DIP Motion.

The Court eventually entered an order approving the DIP financing (the "Final Order"). Pursuant to the Final Order, the Debtors borrowed over $8,000,000 from the DIP Lenders and used cash collateral and other collateral of the Pre–Petition Lenders. The Final Order granted the Pre–Petition Lenders a security interest in and lien upon substantially all of the Debtors' assets and a superpriority claim, junior only to the security interest and debt owing to the DIP Lenders.

Pursuant to a motion dated August 23, 2001 (the "Asset Purchase Motion"), the Debtors sought an order approving the Asset Purchase Agreement between the Debtors and Ritz Camera Centers, Inc. ("Ritz"), pursuant to which, Ritz would acquire substantially all of the Debtors' assets. On September 13, 2001, the Debtors, along with Wachovia, filed an Amended Joint Motion to Approve Stipulation with Respect to Distribution of Proceeds from Sale of Assets of Debtors (the "Stipulation Motion"). The Committee and Kodak opposed the Asset Purchase Motion. Only the Committee opposed the Stipulation Motion.

In its objection to the Asset Purchase Motion, Kodak acknowledged the validity and senior status of the claims of the Pre–Petition Lenders, but contended that the sale violated section 363(f) of the Bankruptcy Code. After several days of hearings, the Court overruled the objections and granted both the Asset Purchase Motion and the Stipulation Motion (together, the "Sale and Stipulation Orders"). The Court specifically found that the value of the property being sold was less than the aggregate value of Wachovia's lien, rendering Kodak's subordinate claim worthless.

Pursuant to the Stipulation Order, the proceeds of the Ritz Sale were distributed as follows: a) first, to satisfy all outstanding obligations under the DIP financing; b) second, $20,000,000 to reduce the Pre–Petition Indebtedness; c) third, up to the next $25,000,000, to establish the administrative expense fund; and d) the balance, to reduce the Pre–Petition Indebtedness. As additional adequate protection and in consideration for consenting to the use of its cash collateral to pay the administrative expenses, the Pre–Petition Lenders were granted a first priority claim against the proceeds of any avoidance action recoveries and any surplus remaining in the administrative expense fund after payment of allowed expenses.

On January 28, 2002, the Committee commenced an adversary proceeding against Wachovia (the "Committee Adversary") generally seeking a determination of the validity, extent, and priority of the Pre–Petition Lenders' claims and liens. Kodak did not file a proceeding to challenge the interests of the Pre–Petition Lenders. Wachovia, the Debtors, and the Committee eventually settled the Committee Adversary. On June 18, 2002, a motion was filed pursuant to Rule 9019 of the

---

**4.** Some of the Pre–Petition Lenders did not participate in the DIP loan.

Federal Rules of Bankruptcy Procedure (the "9019 Motion"), seeking approval of the settlement of the Committee Adversary. A hearing on the 9019 Motion was held on July 16, 2002, with appearances by the Debtors, the Committee, Wachovia, and Kodak.

Kodak generally supported the 9019 Motion, but filed an objection based on two limited points: 1) that the dismissal of the Committee Adversary did not affect the rights of third parties against Wachovia; and 2) that the 9019 hearing did not constitute Kodak's opportunity to be heard on the issue of enforceability of the 1998 Subordination Agreement. The Court found that Kodak had on several occasions been afforded a full and fair opportunity to be heard on the enforceability of the 1998 Subordination Agreement. As a result, the Court approved the 9019 Motion, expressly finding that the 1998 Subordination Agreement was enforceable.

After the Committee Adversary was settled, but prior to the 9019 hearing, Kodak commenced an adversary proceeding in the United States Bankruptcy Court for the Western District of New York (the "WDNY Adversary").[5] Kodak sought, among other things, the equitable subordination of the claims of the Pre–Petition Lenders to Kodak's claim against the Debtors pursuant to section 510 of the Bankruptcy Code. Kodak alleged that it was misled into extending the $30,000,000 loan. Wachovia filed a motion to dismiss the WDNY Adversary; however, before responding to Wachovia's motion, but following the Court's approval of the 9019 Motion, Kodak voluntarily dismissed the WDNY Adversary.

Shortly thereafter, Kodak filed the New York Action against Wachovia in the Supreme Court of the State of New York, alleging breach of contract, tortious interference with contract, and fraud. The complaint filed in the New York Action was substantially identical to the complaint filed in the WDNY Adversary, minus the claim for equitable subordination. Wachovia caused the New York Action to be removed to the United States District Court for the Western District of New York.

On August 30, 2002, the Debtors filed their Disclosure Statement and Plan of Liquidation. The Disclosure Statement provided that "the Committee Stipulation [was] a critical prerequisite to the Plan as the Pre–Petition Bank Group would not be willing to compromise their Claims except as set forth therein." An order confirming the Debtors' plan was entered on January 7, 2003.

On October 11, 2002, the Plaintiffs filed a Complaint for Injunctive Relief, alleging that the New York Action is barred by the doctrines of *res judicata* and equitable estoppel. On October 16, 2002, the Plaintiffs filed a Motion for Preliminary Injunction (the "Preliminary Injunction Motion"). Following a hearing on the Preliminary Injunction Motion, the Court entered a consent order granting the motion, as prepared by the parties. Subsequently, Kodak filed a motion to dismiss and a motion to abstain. The Court denied both motions. On January 23, 2003, the Plaintiffs filed the instant motion.

### STANDARD OF REVIEW

The Plaintiffs seek a permanent injunction based on the doctrine of *res judicata.*[6]

---

5. The WDNY Adversary was filed notwithstanding the absence of a pending bankruptcy case in that court relating to the Debtors. In

fact, the WDNY Adversary utilized the caption of the Debtors' case pending in this Court.

6. In the Motion, the Plaintiffs assert that equitable estoppel bars the New York Action. The

The Court will grant summary judgment only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Material facts are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Id.* The moving party has the burden of establishing the right to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982).

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985). The moving party has the burden to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *See also* Fed.R.Civ.P. 56(e). Once the movant has made a *prima facie* showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir.1991).

Court will not reach the issue of equitable estoppel, as *res judicata* alone bars the New York Action.

### ANALYSIS

The parties herein subscribe to two very different views of the issues before the Court. Wachovia urges the Court to focus on the enforcement of its prior orders. Specifically, Wachovia argues that this Court's prior orders preclude the prosecution of the New York Action or any other action involving the same nucleus of operative facts. Alternatively, Kodak concedes that this Court has jurisdiction to enforce its own orders; however, Kodak alleges that this Court lacks subject matter jurisdiction to adjudicate the state law causes of action pled in the New York Action. Essentially, Kodak argues that the New York Action is simply an intercreditor dispute, completely unrelated to the Debtors.

Kodak's framing of the issues is at odds with the actual facts of this case, the law, and policy considerations. First, Kodak's assertion that this is simply a matter between two creditors fails to acknowledge the triangular relationship between Kodak, Wachovia, and the Debtors; it fails to acknowledge that their alleged cause of action would not exist "but for" the Debtors; and, it fails to account for the uncanny similarity between the complaint filed in the WDNY Adversary and the complaint filed in the New York Action. Second, Kodak mistakenly focuses on whether this Court has jurisdiction to adjudicate the claims in the New York Action, when the actual issue is whether the New York Action is a collateral attack on orders previously entered by this Court. Finally, policy considerations weigh heavily against permitting Kodak's attempt to take multiple bites at the apple, selectively choosing a forum and attempting to frustrate the policy promoting finality of proceedings.

The Court does not agree with Kodak's assertion that the New York Action is simply a matter between two creditors. Wachovia and Kodak were both substantial secured creditors of the Debtors. Wachovia's relationship with Kodak was based upon an agreement between the parties that Kodak's claims and liens arising from Wolf Camera's indebtedness to Kodak are subordinate in all respects to the obligations of Wolf Camera to Wachovia. In the New York Action, Kodak essentially asserts that the subordination agreement, although valid, should be found unenforceable. That determination was made by this Court in the process of determining the validity, extent and priority of the claims against the Debtors.

 Most telling is the uncanny similarity between the complaint in the WDNY Adversary and the complaint filed in the New York Action. A redlined comparison of the documents (*see* Exhibit A, Plaintiffs' Reply Brief in Support of Motion for a Preliminary Injunction) indicates that the complaints are practically identical, with the only material change being the deletion of the claim for equitable subordination. This change certainly raises the concern that Kodak may have removed the section 510 equitable subordination claim to facially escape the inevitable conclusion that the claims should have been raised during the course of the bankruptcy proceeding. Both complaints seek recovery of the $30,000,000 that Kodak loaned the Debtors pursuant to the Second Amended and Restated Loan and Purchase Agreement. "It is well settled that res judicata turns primarily on the commonality of the facts of the prior and subsequent actions, not the nature of the remedies sought." *In re Piper Aircraft Corp.*, 244 F.3d 1289

(11th Cir.2001). By simply deleting the claim for equitable subordination, Kodak does not remove the New York Action from the reach of *res judicata,* as the commonality of facts still remains.

 The elements of *res judicata* have been satisfied and prevent Kodak's prosecution of the New York Action or any other action with the same nucleus of operative facts. For *res judicata* to apply,[7] the following conditions must be met:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second, the judgment must be final on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1550 (11th Cir.1990) (citations omitted).

The first prong examines whether the purported preclusive judgment was rendered by a Court of competent jurisdiction in accordance with the requirements of due process. Kodak unpersuasively argues that the first requirement of *res judicata* has not been met because this Court does not have, and never had, jurisdiction to adjudicate the New York Action. This argument erroneously focuses on this Court's jurisdiction over the precluded action, not the effect of prior orders of this Court. No challenge to this Court's jurisdiction over the Final Order, the Sale and Stipulation Orders, the order approving the 9019 Motion, and the Confirmation Order, has been, nor could have been creditably raised. Each order was valid and

---

7. Because the parties have used the term *res judicata,* for consistency, the Court will also use this term. Notwithstanding, the Court acknowledges that the more precise term for the relief which the Plaintiffs seek is claim preclusion.

rendered by a court of competent jurisdiction; therefore, the first prong of the test is satisfied.

The second prong examines whether the subject judgment is final and on the merits. Kodak does not dispute that the aforementioned prior orders have all become final and non-appealable. *See also In re Clinton Street Food Corp.*, 254 B.R. 523, 530 (Bankr.S.D.N.Y.2000) (stating that a bankruptcy court's order "approving a sale of assets is a final order for res judicata purposes."); *In re Gloria Manufacturing Corp.*, 65 B.R. 341, 344–45 (E.D.Va.1985) (finding that financing orders "preclude the parties and their privies from relitigating issues that were or could have been raised..."); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir. 1990) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 170–171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938)) (stating that an order confirming a plan of reorganization is given the same effect as any district court final judgment on the merits). However, Kodak argues that the merits of the New York Action do not implicate this Court's prior orders insofar as the prior orders address the validity, enforceability, character, or priority of Wachovia's claims or the validity of the 1998 Subordination Agreement. The Court is not persuaded by this argument and again, Kodak has misconstrued the requirements of *res judicata.* Each of the relevant prior orders were entered in core proceedings. If the prior orders "were non-core proceeding[s], [this Court] could only issue proposed findings of fact and conclusions of law, ... and such proposed findings would not be entitled to res judicata effect in subsequent litigation because there would have been no final judgment on the merits." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1548 n. 8 (11th Cir.1986). The Final Order, the Sale and Stipulation Orders, the order approving the 9019 Motion, and the Confirmation Order were all core proceedings, and as such were all on the merits and qualify for *res judicata* effect.

The third prong examines whether there is identity of the parties. Kodak and Wachovia are the only parties in the New York Action. For the purpose of former adjudication, a party includes "all who are directly interested in the subject matter and who have a right to make defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies." *In re Justice Oaks II Ltd.,* 898 F.2d 1544, 1550–51 (11th Cir.1990) (citing 1 A. Freeman, *A Treatise of the Law of Judgments* § 430, at 936–37 (5th ed.1925)). "All creditors of a debtor are parties in interest." *Id.* at n. 5. Kodak and Wachovia were parties with respect to the subject prior orders, and as such, the identity of parties prong is satisfied.

The final prong examines whether the prior action involves the same cause of action as the action or actions sought to be precluded. When claims arise out of the same transaction or series of transactions, the claims are a part of the same cause of action. *Id.* at 1552 (citing Restatement (Second) Judgments § 24 (1982)). The validity of the 1998 Subordination and Intercreditor Agreements was an integral part of the prior orders entered by this Court, the WDNY Adversary, and the New York Action. Kodak's loan of $30,000,000 to the Debtors, which ultimately was used to pay down the Debtors' obligations to Wachovia, formed the factual basis for the WDNY Adversary, the New York Action, and any defense or claims that Kodak could have alleged in connection with this Court's determination of validity, extent and priority of claims. Because the claims that *could have* been raised in connection with this Court's prior orders are based on the same facts as the New York Action—to wit, the

$30,000,000 loaned by Kodak to the Debtors pursuant to the Second Amended and Restated Loan Agreement, the claims are part of the same cause of action and the final prong is satisfied.

■ Policy considerations weigh heavily in favor of this Court enjoining the New York Action or any other action with the same nucleus of operative facts. Courts have generally recognized the importance of finality of judgments in bankruptcy. *Bank of Lafayette v. Baudoin, et al. (In re Baudoin)*, 981 F.2d 736, 739 (5th Cir.1993) (citing *Hendrick v. Avent*, 891 F.2d 583, 587 n. 9 (5th Cir.), *cert. denied*, 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990)). As stated by the court in *Baudoin:* [8]

> [R]estraining litigious plaintiffs from taking more than 'one bite of the apple' has been our avowed purpose since the common law doctrine of res judicata first evolved. Of course, in the bankruptcy context, ... that bite is to be taken as expeditiously and economically as possible... Because of spiraling litigation costs, increasingly congested courts—especially bankruptcy courts—and expanding theories of recovery ... it is more imperative than ever that the doctrine of res judicata be applied with unceasing vigilance

*Id.* (citations omitted).

Kodak stood silent while the Court determined the validity, extent, and priority of Wachovia's claims against the Debtors. Kodak did not object to, nor challenge, the following actions of Wachovia: 1) providing up to $10,000,000 in DIP financing; 2) providing from its cash collateral $25,000,000 to fund administrative expenses; 3) defending and settling the Committee Adversary; and 4) supporting the Debtors' plan. Wachovia will not come

close to being paid its full claim against the Debtors. Undoubtedly, Wachovia had the right to expect that all matters related to its claim against the Debtor would be finally decided in this case and not subject to a collateral attack.

Many of the current Chapter 11 cases have substantially undersecured lenders. Such lenders are often the only entity willing to provide debtor in possession financing, pay for the administration costs of bankruptcy, and "leave money on the table" for unsecured creditors who would not otherwise receive a distribution from the bankruptcy estate. Such creditors realize that even though they bear the costs of the Chapter 11, they will, in many instances, not be fully paid. The *quid pro quo* for such creditors is to bring an expeditious close to all matters concerning their credit relationship with the debtor. Bluntly stated, such creditors pay for closure. Unsecured creditors would have no incentive to engage in such actions if the bankruptcy proceedings do not provide finality as to matters that are inextricably bound to their relationship with the debtor.

Certainly, if Wachovia and Kodak were "just two creditors" and the New York Action was based on a non-debtor related action, then Wachovia could not expect finality. However, the New York Action is related to the Debtors, and is in essence about whether Wachovia's claim should be reduced by $30,000,000. As such, policy considerations dictate finality, and Kodak made a tactical decision to forego its "one bite at the apple."

### CONCLUSION

For the foregoing reasons, the Court finds that the New York Action or any other action with the same nucleus of oper-

---

**8.** Although in *Baudoin* the court was dealing with a Chapter 7 debtor, the same principals apply with equal vigilance in a Chapter 11 liquidation.

ative facts, is barred by the doctrine of *res judicata*. Accordingly,

**IT IS ORDERED** that the Motion be and is hereby **GRANTED**.

The Clerk of Court shall serve a copy of this Order upon the Plaintiffs' counsel, the Defendant's counsel, and the Trustee.