[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-12327
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2006
THOMAS K. KAHN
CLERK

D.C. Docket Nos. 03-3269-CV-CAP-1
01-83470-BKC-CR

In Re:

        ATLANTA RETAIL, INC.,
        f.k.a. Wolf Camera, Inc.,

                                  Debtor.

-----------------------------------------------------------------------------------

EASTMAN KODAK COMPANY,

                                  Plaintiff-Appellant,

versus

ATLANTA RETAIL, INC., f.k.a. Wolf
Camera, Inc., etc.
WACHOVIA BANK, NATIONAL ASSOCIATION,

                                Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 18, 2006)**

Before BIRCH and CARNES, Circuit Judges, and TRAGER*, District Judge.

_____
*Honorable David G. Trager, United States District Judge for the Eastern District of New York
sitting by designation.

TRAGER, District Judge:

This appeal raises the question: under what circumstances will a creditor be barred from later bringing an action against a co-creditor based upon state law claims if, during the pendency of a bankruptcy, it failed to raise such claims.

Plaintiff-appellant Eastman Kodak Company ("Kodak") appeals the decision of the United States District Court for the Northern District of Georgia, which affirmed an August 22, 2003 order of the Bankruptcy Court. That order enjoined Kodak from continuing to seek relief against Wachovia Bank f/k/a First Union National Bank ("Wachovia") in the United States District Court for the Western District of New York for violations of state law ("New York action"). The bankruptcy court held, and the district court affirmed, that Kodak was precluded from bringing the New York action by the doctrine of res judicata as a result of orders issued by the bankruptcy court in a bankruptcy filed by Atlanta Retail, Inc., f/k/a Wolf Camera, Inc., et al. ("Wolf" and "Wolf bankruptcy").

We hold that res judicata does not bar the New York action because Kodak could not have received a full remedy in the contested Wolf bankruptcy proceedings and because the same nucleus of operative fact was not presented in the two actions. Moreover, res judicata does not require a creditor to raise an independent state law claim against a co-creditor in an adversary bankruptcy

2

proceeding unless the resolution of that claim explicitly becomes an essential part of the bankruptcy plan. Here, Kodak's claim against Wachovia in no way impacted on the confirmation of the Wolf bankruptcy plan. Accordingly, the judgment of the district court is reversed and the injunction is vacated.

## Background

### (1)

Kodak had a long-standing business relationship with Wolf, supplying film and other photography-related goods. In the 1990's Kodak provided financing as secured lender to enable Wolf to expand, thereby increasing Kodak's sales.

In September 1998, Kodak and Wachovia, which acted as another secured lender to Wolf, entered into an agreement ("the Subordination Agreement") under which Kodak's loans were subordinated to Wolf's other secured creditors including Wachovia ("pre-petition lenders"). At the same time, Wachovia and Kodak made a separate agreement ("the Intercreditor Agreement") to use their best efforts to promptly notify each other of occurrences "which may significantly affect the other Secured Creditor with regard to the ability of [Wolf] to meet its obligations . . .."

In late 1999 Kodak began discussions with Wolf about an additional $30 million loan for a further expansion of the business. Like Kodak's other loans, it

was contemplated that this new loan was also to be subordinated to the loans of the other pre-petition lenders. In its pleadings in the New York action, Kodak alleges that Wachovia was aware of these negotiations and their stated purpose and, indeed, that it encouraged the loan. However, Wachovia did so without disclosing its plan that Wolf would use the money to meet its financial obligations to Wachovia.

Kodak also claims that it was not aware at the time that Wolf was nearing a breach of its financial obligations with Wachovia and the other pre-petition lenders. Kodak alleges that on March 2, 2000, Wachovia and Wolf's other pre-petition lenders entered into an agreement with Wolf under which Wolf's covenant defaults would be forestalled until the Kodak loan was completed, unless Wolf failed to receive the loan by April 2000, at which point the defaults would accrue. Kodak further alleges that it was never informed of this agreement as well – as required by the Intercreditor Agreement – and only became aware of the alleged breach of the Intercreditor Agreement during the pendency of the bankruptcy. Wachovia did not share this information, Kodak alleges, because Wachovia knew that Kodak would never have loaned the money to Wolf for the purpose of paying Wachovia's loan, rather than for expansion purposes.

In March 2000, Kodak did make the $30,000,000 loan to Wolf with the

4

express condition that the loan fund the development of Wolf's business. Included in the loan agreement was the following clause:

> Wolf covenants to Kodak that it will use the proceeds of the New Term Loan to fund new photo retail store development, new photo retail store acquisitions and upgrading the capability of existing and acquired photo retail stores.

(Second Am. and Restated Loan and Purchase Agreement, dated Mar. 14, 2000, between Kodak and Wolf, ¶ 3.3).

On March 28, 2000, the money was transferred from Kodak to Wolf. On the same day, in accordance with the alleged secret agreement between Wolf and the pre-petition lenders, the money was transferred again, this time to Wachovia and the other pre-petition lenders in order to pay some of Wolf's debts. It appears to be undisputed that none of the money was used to finance an expansion of the business as contemplated in the loan agreement.

On June 21, 2001, Wolf voluntarily filed for Chapter 11 bankruptcy. On the same date, Wolf also filed an emergency debtor in possession motion ("DIP Motion"), requesting permission to receive financing from Wachovia and the other pre-petition lenders in the amount of $10,000,000, permission to continue to use the cash collateral from the loans from the pre-petition lenders, and for the court to provide protection to the pre-petition lenders. Kodak did not file an objection to this motion, but the Official Committee of Unsecured Creditors ("Unsecured

5

Creditors") did object. Thereafter, Wachovia filed proofs of claim and included both the Subordination Agreement and the Intercreditor Agreement as evidence that Kodak's claims were subordinate to those of the pre-petition lenders.

The bankruptcy court granted the DIP motion ("Final Order"). Wolf borrowed approximately $8,000,000 from Wachovia and the other pre-petition lenders. The court granted this loan first priority, and also granted a superior security interest to the pre-petition lenders compared to the remainder of Wolf's creditors, which included Kodak. Wolf owed these pre-petition secured creditors approximately $77,600,000 in addition to the amount it owed Kodak.

On August 23, 2001, Wolf filed a motion seeking approval for Ritz Camera Centers, Inc. ("Ritz") to purchase nearly all of Wolf's assets ("Sale Motion"). Approximately a month later on September 13, 2001, Wolf and Wachovia filed an Amended Joint Motion to Approve Stipulation with Respect to Distribution of Proceeds from Sale of Assets of Debtors ("Stipulation Motion"). The Unsecured Creditors objected to both the Sale and Stipulation Motions. Kodak only opposed the Sale Motion.

Kodak did not object to the fact that its claims were subordinate to the pre-petition lenders. Instead Kodak argued that Wolf could not sell its assets to Ritz "free and clear" of its liens. See 11 U.S.C. § 363(f)(3). Kodak argued that because

6

the proposed sale price of $84,700,000 could not cover the combined claims of Wachovia and Kodak that the sale could not be considered free and clear if the statute was read to require the repayment of the face value of all liens rather than their market value. The bankruptcy court rejected this argument, holding that Kodak waived its right to object to the sale in the Intercreditor Agreement. The bankruptcy court also rejected Kodak's legal argument holding that the market determined the value of the liens. As Kodak's claims were subordinate and there were insufficient funds to pay the priority claims, the bankruptcy court found that Kodak's claims were in fact valueless.

In addition, the bankruptcy court also found against the Unsecured Creditors and granted the Stipulation Motion ("Stipulation Order"). It also gave permission for the sale ("Sale Order"). Under the Sale Order, the proceeds of the sale were distributed first to the post-petition lenders, then $20,000,000 for pre-petition debts, and then $25,000,000 for administrative expenses, with any balance to the remainder of the pre-petition debts.

After the sale, which was approved by the bankruptcy court on September 21, 2001, the Unsecured Creditors filed an adversary action challenging Wachovia's and the other pre-petition lenders' claims, arguing that certain of their liens in Wolf's assets were not perfected. Kodak did not take part in this action.

7

Rather, Kodak filed one of its own in the United States Bankruptcy Court for the Western District of New York. Kodak filed this proceeding against Wachovia alone, arguing that Wachovia and the other pre-petition lenders' claims should be equitably subordinated to Kodak's claims. It also filed claims for breach of contract, fraud and tortious interference with a contract. All of these claims were based on Kodak's claim that it was fraudulently induced by the pre-petition lenders to provide the $30,000,000 loan to Wolf even though they knew, and so contracted with Wolf, that the loan would be used to pay their loans rather than for the contemplated expansion. Wachovia and the pre-petition lenders filed a motion to dismiss.

In the meantime, the Unsecured Lenders, Wolf and the pre-petition lenders had agreed on the terms of a settlement of the Unsecured Lenders' adversary proceeding. A motion was filed under Rule 9019 of the Federal Rules of Bankruptcy Procedure for approval of this settlement. Kodak made a limited objection to this motion, but did not object to the settlement itself. Kodak only objected "to the extent the language of the Stipulation could be construed as barring any and all claims against the Pre-Petition Lenders, including claims held by third parties independent of the Debtors or their estates[.]"

At the July 16, 2002 hearing on the Rule 9019 motion the debtor argued that all questions of subordination, including Kodak's adversary proceeding, had to be resolved in the bankruptcy court in order for the settlement to stand. Kodak did not use this forum to raise the allegations it made in the New York action. It did argue that the fraud claims in the New York action were based on newly discovered evidence that had not been available at the time of the earlier orders. The bankruptcy court granted the Rule 9019 motion, approving the settlement ("Settlement Order").

After this hearing, on August 2, 2002, rather than responding to Wachovia's motion to dismiss the case in the Bankruptcy Court for the Western District of New York, Kodak voluntarily dismissed the action. On the same day, Kodak filed a new case ("New York action") in the New York Supreme Court, alleging the same state law claims as in its prior suit, but excluding the equitable subordination claim. On Wachovia's motion, the case was removed to the U.S. District Court for the Western District of New York on diversity grounds.

Wolf filed its Disclosure Statement and Plan of Liquidation on August 30, 2002. The bankruptcy court endorsed the plan on January 7, 2003. The plan did confirm that Kodak's loans were subordinate to the pre-petition lenders. However, the plan did not prohibit any suits against third parties – only against the debtor.

Although the record provided does not show the specific amounts that each party received, it is undisputed that Kodak did not receive any portion of its $30 million loan from the distribution. While Wachovia and the other pre-petition creditors did receive some amount (at oral argument an estimate of $23 million was suggested), there is no question that Wachovia's recovery was less than the total amount owed to Kodak. Therefore, even if Kodak had taken Wachovia's place through equitable subordination, it would not have received the full amount sought in the New York action.

**(2)**

On October 11, 2002, Wolf and Wachovia filed suit against Kodak in the Georgia bankruptcy court seeking an injunction against Kodak's New York action on the basis of res judicata and – a now abandoned argument – of collateral estoppel. The bankruptcy court entered an order barring the suit on the basis of res judicata on August 22, 2003. The bankruptcy court rejected Kodak's argument that the New York action was only an intercreditor dispute and instead focused on the contractual relationships between Kodak, Wachovia and Wolf. It framed the New York action as an attack on its previous orders and an attempt to make the Subordination Agreement unenforceable. The bankruptcy court stated that the

10

Subordination Agreement was found enforceable "in the process of determining the validity, extent and priority of the claims against the Debtors." In re Atlanta Retail, Inc., 297 B.R. 299, 305 (Bankr. N.D. Ga. 2003). The bankruptcy court identified the orders approving the sale of Wolf to Ritz, the order approving the Rule 9019 motion, and the order approving the final plan of liquidation as the prior orders, as having a preclusive effect. Id. The order was affirmed by the U.S. District Court for the Northern District of Georgia. Eastman Kodak Co. v. Atlanta Retail, Inc. et al, 03-cv-3269 (N.D. Ga. Mar. 25, 2005).

In appealing this order, Kodak makes five arguments, only three of which need be addressed.[1] First, Kodak argues that this is not the same "cause of action" because the bankruptcy court did not consider the evidence relevant to its state law claim; in particular, Wachovia's withholding of information about the revision of its debt agreement with Kodak. Kodak relies on this court's decision in Kaiser Aerospace & Elec. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244

_____

[1] Kodak also argues that the bankruptcy court should not have granted the injunction because res judicata should have been raised as an affirmative defense before the state court. See Alabama v. United States Army Corps of Engineers, 424 F.3d 1117 (11th Cir. 2005), petition for cert. filed, 74 U.S.L.W. 3517 (U.S. Mar. 6, 2006) (limiting the court's powers under the All Writs Act). Since we now decide that the bankruptcy and district courts' decision to enjoin Kodak's state law claim should be reversed, there is no need to address Kodak's alternative argument that the defense of res judicata would have been more properly raised before the state court. Kodak further argues that the "same party" requirement of res judicata was not met because Kodak never filed an action directly against Wachovia. See discussion infra note 3.

11

F.3d 1289, 1297-1301 (11th Cir. 2001) for this point, arguing that the bankruptcy and district courts did not properly apply the case. Kodak argues that the bankruptcy court did not, and was not required, to consider whether a breach of contract between the two lenders had occurred when it made its rulings and, therefore, Kaiser is controlling.

Second, Kodak argues that it could not have brought its state claims against Wachovia in the bankruptcy court because its breach of contract was not "related to" the underlying bankruptcy claim – the resolution of Wolf's estate. Therefore, the bankruptcy court lacked jurisdiction to hear the case.

Third, again relying on Kaiser, Kodak argued that it lacked an adequate procedural vehicle to bring the state breach of contract claim before the bankruptcy court. 244 F.3d at 1303-04. Kodak further claims that all of the bankruptcy court's orders were issued on contested matters rather than as adversary proceedings. Kodak argues that because the procedural framework for each type of proceeding is different, the orders issued as contested matters could not preclude Kodak's claims, which would have had to have been raised as adversary proceedings. Kaiser, 244 F.3d at 1304.

In response, Wachovia agrees with Kodak that Kaiser is controlling, but focus on its differences from the case at hand. In particular, it cites the contractual

12

relationships between Kodak, Wachovia and Wolf in comparison to the absence of any relationship between Kaiser and the debtor in the Piper bankruptcy. Wachovia argues that this court in Kaiser relied on this lack of any relationship between the debtor and the plaintiff in finding that Kaiser did not have standing to raise the contested claims in the bankruptcy proceeding. Wachovia argues that, here, the district court was correct in finding that Kodak was sufficiently involved and the contractual relationships were sufficiently discussed in the bankruptcy that Kodak was required to bring its state law claims during the bankruptcy. It also argues that the fact that Kodak originally filed its case as an adversary action in the Western District of New York was essentially an admission that the case could be tried before a bankruptcy court.

Wachovia further argues that the bankruptcy court's orders were final orders deserving of the application of res judicata. It argues that Kodak could have raised its objections during the course of the litigation of these orders and its tactical refusal to raise its fraud claim does not protect it from the effects of res judicata. Wachovia further argues that the bankruptcy court properly exercised its discretion in granting the injunction.

Lastly, Wachovia asks the court to rely on equitable and judicial estoppel to enjoin the action if the lower court is not upheld.

13

## Discussion

## (1)

## Res Judicata

Res judicata, or more properly claim preclusion, is a judicially made doctrine with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy; it bars claims that could have been litigated as well. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Questions of law raised by the application of res judicata are reviewed de novo. Kaiser Aerospace & Elec. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1295 (11th Cir. 2001) (applying de novo review to a bankruptcy court's decision based on res judicata); In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990). In order to establish that a case is barred under the doctrine of res judicata, this court has held that all four of the following elements must be present:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second the judgment must be final and on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

14

In re Justice Oaks II, 898 F.2d at 1550 (internal citations omitted). "When all of the requirements of claim preclusion are satisfied, 'the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties . . . not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented.'" Justice Oaks II, 898 F.2d at 1552 (quoting Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 319, 47 S.Ct. 600, 602 (1927).

As in Kaiser, there is no real question that the bankruptcy court was a court of competent jurisdiction[2] and that, at the very least, its confirmation order was final and on the merits. See Justice Oaks II, 898 F.2d at 1549 (finding order endorsing confirmation plan final, but order confirming settlement not to be final and on the merits). However, it is clear that res judicata does not apply because at least two of the elements are lacking here.[3] Kodak could not have received full relief in the first action, and the contested bankruptcy proceeding and the state

---

[2] Wachovia argues that Kodak challenged the jurisdiction of the bankruptcy court in its brief. It did not. Rather, Kodak addressed a separate issue: whether it could have brought the claim before the bankruptcy court. This issue is discussed below.

[3] As previously mentioned Kodak argues that the identity of parties requirement is also lacking. Kodak challenges the district court's characterization of the claims among the creditors as interpleader suits. Rather, Kodak argues, its claim against co-creditor Wachovia more properly should be analogized to a permissive cross claim rather than a compulsory counterclaim. As we conclude that res judicata is not applicable on other bases, there is no need to discuss this point.

15

court claim do not involve the same nucleus of operative fact or "transaction or occurrence." See Ragsdale v. Rubbermaind, Inc., 193 F.3d 1235, 1239, n. 8 (11th Cir. 1999) (applying a transactional approach to determining the nucleus of operative fact in each action), citing Restatement (Second) of Judgments § 24.

a.      **Res Judicata and the Availability of Relief in Contested Proceedings**

Under the most basic principles of res judicata, Kodak did not have to sue Wachovia in a forum where it could not receive full relief. Kaiser, 244 F.3d at 1303; see also Restatement (Second) of Judgments § 26 (1)(c). Wachovia has argued that Kodak could have raised its claims regarding Wachovia's alleged fraud in the context of one of the five contested proceedings before the bankruptcy court by challenging the enforcement of the Subordination Agreement. It urges that the bankruptcy court could have decided to grant equitable subordination of Kodak's claim at any point while considering these motions. This argument fails here because Kodak could not have received its full requested relief under any of these orders.

As in Kaiser, it is not clear that Kodak's challenge to any of the orders would have resulted in any additional benefit to Kodak. Thus, in Kaiser, it was found that the plaintiff did not have to raise objections to the bankruptcy plan's confirmation

because, even if successful, the objections would only have resulted in defeating the confirmation, not providing the relief Kaiser sought under state law. 244 F.3d at 1303. Likewise, here, if Kodak had challenged any of the five motions, it would have done Kodak little good. The result would only be their denial, not the equitable subordination of Wachovia's claims to Kodak.

In each of the five orders, either the relief was not available within the context of the claims, or the contested proceeding was not the appropriate procedural device to achieve any kind of relief. The Settlement Order, which approved the final resolution of the Unsecured Creditor's claims, did not touch upon Kodak's claims and specifically stated that it did not resolve the claims in the New York action. The four remaining orders, the Final Order (confirming the DIP plan), the Sale and Stipulation Orders (endorsing the sale to Ritz and the division of profits) and the final confirmation order, did endorse the Subordination Agreement by setting the priority of the lenders. As Kodak does not challenge the validity or enforcement of the Subordination Agreement itself, but instead alleges a violation of it, the only conceivable means for Kodak to receive relief under these orders would be to seek equitable subordination of the parties.[4] However, in order

_____

[4] Wachovia now argues that the bankruptcy court determined that the Subordination Agreement could not be further contested. This is not at all clear from the record. The bankruptcy judge stated:

So any effect of the order, as I read this stipulation, I'm not making

17

to receive such relief, a party must file an adversary proceeding unless the plan itself provides for subordination. Fed. R. Bankr. P. 7001 (8). The plan here did not allow for subordination. Therefore, filing objections at the contested proceedings would not have provided Kodak with the requested relief.

More significantly, even if equitable subordination were available, the amount Wachovia received from the bankruptcy would not be sufficient to meet Kodak's losses. When Kodak filed suit, all of the pre-petition lenders had only received $21.7 million. Wachovia was only entitled to a fraction of this amount. Although the full record of the current distribution amount is not before this court, both sides conceded in oral argument that the total amount that Wachovia itself received from the bankruptcy as one of the many pre-petition lenders was not sufficient to satisfy Kodak's claim. In other words, even if Kodak had taken

---

> any comment about the suit . . . in Rochester. I'm not making any comment about whether the venue was appropriate. I'm not making any comment about whether it's timely. It's simply not before the Court this morning. And at some point in time, there's going to be a hearing in Rochester or here, and the Court will . . . hear you out fully . . . in any position with regard to that litigation when it comes before this Court. It may be that [it is heard in Rochester] but that's simply not before the Court this morning.

(RB-874-27, 34 (Tr. 07-16-02)). The Bankruptcy Judge's subsequent order banning the New York action was based more on the argument that Kodak's claims could have been raised during the Wolf bankruptcy. In re Atlanta Retail, Inc., 297 B.R. 299 (Bankr. N.D. Ga. 2003). Nevertheless, as stated, the issue is not the validity of the Subordination Agreement, which Kodak does not contest, but whether Wachovia violated it as well as the Intercreditor Agreements.

Wachovia's place in the bankruptcy through equitable subordination, its claim against Wachovia would not have been satisfied.

In addition, not only would Kodak not be made whole by equitable subordination of Wachovia's claims, Kodak also could not have been granted state law damages in the context of the contested proceedings. Any suit Kodak filed to "recover money or property" against a person other than the debtor would have to be filed as an adversary proceeding, rather than be raised within the context of a contested proceeding. Fed. R. Bankr. P. 7001 (1). Here, as in Kaiser, "the defeat of the plan . . . would not necessarily have resolved . . . claims for damages – including potential consequential and punitive damages." 244 F.3d at 1303-04. We reach the same conclusion as the court in Kaiser: that objections to the various motions in the contested proceeding context did not provide "an adequate vehicle to assert fully the claims it raises in the state court action." Id. The most basic principles of res judicata require that full relief must have been available in the first action in order for the second action to be barred. See Restatement (Second) of Judgments § 26 (1)(c). Therefore, res judicata cannot apply to the contested matters.

**b. Res Judicata and the Adversary Proceedings.**

Wachovia argues that, nevertheless, res judicata should apply despite the fact that full relief was not available in the contested proceedings because Kodak could have filed an adversary action within the context of the bankruptcy. Kodak disputes that the bankruptcy court would have had jurisdiction over such an action, claiming that the state law action was not "related to" the bankruptcy. See 28 U.S.C. § 157(c)(1). Kodak also claims that preclusion of such claims on the basis of the bankruptcy court's judgment resulting from only a contested proceeding would raise Seventh Amendment concerns.[5]

_____

[5] Kodak argues that even if the claims were within the court's jurisdiction they would have been non-core proceedings requiring de novo review by a district court. See 28 U.S.C. § 157 (b)(2). The circuits disagree as to whether a decision in a core contested hearing can ever have a preclusive effect over issues which can only be tried in a non-core adversary proceeding. See e.g. Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183 (5th Cir. 1990) (finding that a bankruptcy court's confirmation plan could not preclude a later RICO claim because the bankruptcy court would not have jurisdiction over that claim); Barnett v. Stern, 909 F.2d 973 (7th Cir. 1990) (holding that the confirmation plan could only preclude a later claim if the later claim were within the bankruptcy court's core jurisdiction and could be heard in a contested proceeding); compare Sanders Confectionary Products Inc. v. Heller Financing Inc., 973 F.2d 474 (6th Cir. 1992), cert. denied 506 U.S. 1079 (1993) (holding that core bankruptcy proceedings can preclude non-core proceedings); Sure-Snap Corp. v. State Street Bank Trust Co., 948 F.2d 869 (2d Cir. 1991) (holding that core proceedings can preclude on the basis of res judicata non-core proceedings before the bankruptcy court). This circuit, however, has addressed this issue only in dicta. See I.A. Durbin v. Jefferson National Bank, 793 F.2d 1541, 1548 n.8 (11th Cir. 1986) (assuming without deciding that a contempt proceeding had res judicata effect, but noting that if it were non-core, it would have to be reviewed by the district court and "such proposed findings would not be entitled to res judicata effect in subsequent litigation because there would have been no final judgment on the merits"). It is not necessary to reach this issue because, as discussed later, the New York action was not based on the same cause of action as the Wolf bankruptcy and, therefore, res judicata does not apply.

Bankruptcy courts have jurisdiction, by reference from the District Courts, over "all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11." 28 U.S.C. 157(a), 157(b)-(c). Neither party has cited a case in this circuit that indicates that the bankruptcy court would have had jurisdiction over a claim between two creditors when the outcome would not affect the amount of money available in the bankruptcy estate. However, the bankruptcy court would have had jurisdiction over a claim for equitable subordination as a core proceeding determining the priority of the liens. 28 U.S.C. 157 (b)(2)(K). If Kodak had brought an equitable subordination claim, it would appear that the bankruptcy court would then have had jurisdiction over the state law claims as claims "related to" the equitable subordination claim, at least where they would directly affect the bankruptcy plan. This issue need not be addressed because the case turns not on whether Kodak could, but whether it was required to bring an adversary proceeding in the bankruptcy to resolve its state law claims.

Again, assuming the bankruptcy court would have had jurisdiction over the state claims in an adversary proceeding, it does not follow that the New York action would have been precluded. The sweeping limits of jurisdiction do not set the boundaries of res judicata. Wachovia is correct in asserting that res judicata applies not only to claims which were actually brought before the previous court,

21

but also to those claims "which could have been raised in that action." Kaiser, 244 F.3d at 1296. However, res judicata only requires a litigant to raise the claims in the first proceeding "if the later litigation arises from the same cause of action." In re Justice Oaks II, 898 F.2d at 1550 (internal citations omitted).

Both parties have suggested that we look to the Third Circuit to determine which claims to compare to the second litigation. We do not think that the Third Circuit decisions help Wachovia because as we read the cases the inquiry is narrowed in the context of two creditors in a bankruptcy proceeding to comparing only the claims which were actually brought against a co-creditor to the claims in the later litigation. See Eastern Minderals & Chemicals Co. v. Mahan, 225 F.3d 330, 337-338 (3d Cir. 2000); Corestates Bank, N.A., v. Hulls America, Inc., 176 F.3d 187, 202 (3d Cir. 1999). In any case, in this circuit, we have not narrowed the analysis, instead looking at all the previous bankruptcy orders, regardless of whether there were claims between the creditors during the proceedings leading to those orders. See Kaiser, 244 F.3d at 1299-1300; In re Justice Oaks II, 898 F.2d at 1551. We follow that approach in this case.

In order to determine whether the two proceedings are based on the same cause of action, the test is whether they "arise[] out of the same nucleus of operative fact, or [are] based upon the same factual predicate." Kaiser, 244 F.3d at

22

1297. In order to compare the actions, it is necessary to look not only at the facts that were before the bankruptcy court, but also the factors which the bankruptcy court was required by statute to consider in making its previous decisions. Id. at 1299. This is "'premised on the notion that the bankruptcy court has addressed in the confirmed plan and order only those issues that are properly within the scope of the confirmation hearing.'" Kaiser, 244 F.3d at 1290, quoting In re Seidler, 44 F.3d 945, 948 (11th Cir. 1995) (emphasis added in Kaiser).

If the evidence crucial to the second action was never raised before the court in the first action, it is "powerful evidence" that the two cases are not based on the same nucleus of operative fact. Kaiser, 244 F.3d at 1297. The New York action addresses the facts surrounding negotiation of Kodak's $30 million loan to Wolf. It relies on evidence of Wachovia's alleged bad faith in failing to tell Kodak that it had encouraged Wolf to enter the loan so that it may pay its debts to Wachovia and the other pre-petition lenders. While the Subordination Agreement and the Intercreditor Agreement were before the bankruptcy court, neither Kodak's allegations of the breach of the "good faith" clause of the Intercreditor Agreement, nor any evidence in support of these allegations, were ever placed before the bankruptcy court. The two documents were before the bankruptcy court solely for the purpose of establishing the priorities of the creditors. If Wachovia believed the

23

facts alleged in the New York action were relevant, it could have raised them by seeking a declaratory judgment as to those allegations. See Fed. R. Bankr. 7004 (9). Indeed, as the bankruptcy unfolded, Kodak and Wachovia were not truly adversarial, and their interests, if not aligned, were certainly not in opposition. This, together with the fact that the evidence concerning the state law claims was never raised as a serious issue, is powerful evidence that the claims are not based on the same nucleus of operative fact. Kaiser, 244 F.3d at 1297.

As the facts that form the basis of Kodak's New York action were never before the bankruptcy court, we turn to each of the orders and evaluate whether the evidence would have had, as a matter of law, to have been considered by the bankruptcy court in the course of determining the outcome of the orders. Kaiser, 244 F.3d at 1299.

The bankruptcy court's first order confirmed the DIP plan at the beginning of the bankruptcy. This plan allowed Wolf to borrow money and continue to use existing cash to run its business. In evaluating whether to allow this plan, the bankruptcy court had to make the determination that the debtor was not able to receive unsecured credit and that the only available credit was from a creditor who insisted on having priority over all other creditors, including administrative expenses. 11 U.S.C. § 364 (c)(1); (d)(1). The order also gave a limited schedule

for all claims against pre-petition creditors that were in the debtor's interest. The order did not touch upon claims between co-creditors. Clearly, none of the issues before the court in this proceeding required the court to consider the allegations of fraud by one co-creditor (Kodak) against another (Wachovia). Therefore, this order and the New York action are not based on the same nucleus of operative fact; nor do they constitute the same cause of action.

The second order, the Sale Order, held that Wolf could sell its business to Ritz. In determining whether to allow the sale, the bankruptcy court was required to consider whether the sale was fair and agreed to by the secured creditors (11 U.S.C. § 363 (b)) and whether the price was greater than the value of Wolf's liens (11 U.S.C. § 363 (f)). The court also made a legal ruling that Kodak waived its right to object to the sale in the Intercreditor Agreement. Again, these rulings did not require the evaluation of the alleged fraud by Wachovia prior to the bankruptcy.

The third order, the Sale Proceeds Order, endorsed a stipulation made by the parties as to the distribution of the sale to Ritz. This proposed order did set the priority of who would receive the proceeds of the sale. However, Kodak and the other unsecured lenders were neither parties to nor bound by the stipulation. The rights of unsecured lenders were specifically reserved, subject to the restrictions in

the Final Order. Again, none of the determinations in the Sale Proceeds Order required the consideration of the alleged fraud.

The fourth order, the Settlement Order, has already been found not to be a judgment subject to res judicata. Justice Oaks II, 898 F.2d at 1549 (holding that the authorization of a settlement is not a final decision on the merits). The only case Wachovia cited to the contrary, Cristo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000), specifically stated that while a settlement could be a final judgment for the purposes of collateral estoppel as to issues pertaining to the confirmation of the settlement, such an order was not final for the purposes of res judicata.

Finally, there is the confirmation order which was a final judgment. Kaiser, 244 F.3d at 1299; Justice Oaks II, 898 F.2d at 1549-50. In this order, the bankruptcy court made the final determination of the priority of the lenders. In doing so, it was required to consider the factors set out in 11 U.S.C. 1129 (a). See Kaiser, 244 F.3d at 1299. This section requires the bankruptcy court to consider the fairness of the plan to all classes of creditors and whether they have either accepted the plan or received a fair benefit from it. Id. In making an evaluation of the plan's fairness, the statute did not require and the bankruptcy court would not have been aided in making that evaluation if it had the allegations of Wachovia's fraud before it. The Confirmation Order did set the priorities of the creditors to the

remainder of Wolf's assets. However, the confirmation plan itself only purported to resolve the claims against the debtor.

In some cases, confirmation plans have included releases as to third parties and among creditors, to much criticism as potentially violating § 524(e) which states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such a debt." See In re Continental Airlines, 203 F.3d 203, 214 (3d Cir. 2000) (rejecting plan that released non-debtors' claims against other non-debtors without consent); cf. In re Master Mortg. Inv. Fund, Inc., 168 B.R. 930 (Bankr. W.D. Mo. 1994) (allowing such a release with certain factors including alignment of interests of the released third party and debtor, benefit to the debtor, agreement of the class and substantially complete payout of all claims). Although there was no such release in this case, the bankruptcy court articulated one of the common justifications for allowing them: a reward for creditors such as Wachovia who cooperate with the bankruptcy and accept less than their initial secured loans. In re Atlanta Retail, Inc., 297 B.R. at 307. Here, however, no such release was even contemplated. Wachovia should not receive more repose from the other creditors in the bankruptcy than it would have received through a release, which while legally questionable, would at least

have the advantage of providing notice to Kodak. Participation in a bankruptcy cannot relieve a creditor of allegations of its own fraud in another context.

In sum, the same nucleus of operative facts are not present in both cases. The focus of the bankruptcy court, and rightly so, was the equitable distribution of the debtor's funds and the administration of the estate. Its orders did apply the Subordination and Intercreditor Agreements in that Kodak's claims were subordinated to those of Wachovia and the other pre-petition creditors according to those agreements. However, Kodak does not contest the validity or the enforcement of these agreements. Kodak has instead brought an entirely separate fraud claim. The evidence in support of this fraud claim, Wachovia's alleged inducement of the loan from Kodak to Wolf, was not required to be considered in any of the hearings before the bankruptcy court and was not. Therefore, res judicata does not apply.

**(3)**

**Judicial and Equitable Estoppel**

Wachovia's final arguments involve the application of judicial and equitable estoppel. Wachovia cannot expect to receive benefit from the doctrines of judicial or equitable estoppel. Equitable estoppel provides relief for parties who have been

induced into behavior through another party's false representation; judicial estoppel prevents a party from later raising completely unknown claims. See In re Colarusso, 280 B.R. 548, 559 (Bankr. Mass. 2002); DeLeon v. Comcar Indus., 321 F.3d 1289, 1291 (11th Cir. 2003). Here, Kodak did not hide its intention to sue Wachovia under tort law. At the time of the Rule 9019 hearing, Kodak had already filed suit in the Bankruptcy Court for the Western District of New York and argued during the hearing that it had the right to continue its equitable subordination claim. Wachovia had notice of Kodak's claims at the time of the resolution of the bankruptcy. It could have filed for a declaratory judgment to resolve any concerns regarding Kodak's claims but chose not to do so.

**Conclusion**

Considering that Kodak could not have received full relief in the contested bankruptcy proceedings and the New York action did not have the same nucleus of operative facts as any of the issues raised in the contested proceedings, we reverse the bankruptcy and district court's decision to preclude the New York action on the basis of res judicata and vacate the injunction issued against Kodak proceeding with the New York action.

**REVERSED.**