**REFINED SUGARS INC., Plaintiff,**

v.

**SOUTHERN COMMODITY CORP. and Arthur Green, Defendants.**

No. 85–0094–CIV.

United States District Court,
S.D. Florida.

Oct. 28, 1988.

David J. Mark, New York City, Eric B. Meyers, Miami, Fla., for plaintiff.

Edward K. Joffe, Miami, Fla., for defendants.

## MEMORANDUM OPINION

SCOTT, District Judge.

This case presents the Court with a convicted felon's attempt to avoid civil liability for his previously admitted criminal acts. By this Motion, Plaintiff seeks partial summary judgment on its counts for fraud and civil theft. The Court finds that offensive collateral estoppel precludes relitigation of issues of fact and law previously determined by Arthur Green's plea of guilty. Accordingly, Plaintiff's Motion for Summary Judgment on Counts V and VII is granted.

## I.

## HISTORY OF THE CASE

### A. The Instant Litigation

Plaintiff, Refined Sugars Inc. (RSI), brings a seven count complaint against Southern Commodity Corp. (SCC) and Arthur Green (Green). Green was President of SCC between 1981 and 1984. The complaint alleged breach of contract, fraud, breach of express warranties, RICO and theft. By prior order, the RICO count was dismissed.

On May 20, 1985, SCC filed a voluntary petition in bankruptcy. As a result, RSI's claims against SCC were stayed pursuant to 11 U.S.C. § 362, and RSI proceeded solely against Arthur Green. The parties engaged in lengthy discovery including the deposition of pertinent players. Following completion of discovery, RSI moves for partial summary judgment on the counts alleging fraud and civil theft. The Defendant opposes this motion. Resolution of this motion requires an examination of an intriguing factual scenario involving the United States Customs Service Duty Drawback Program and the Department of Agriculture's Re–Export Program.

Under these programs, a United States sugar refiner must pay custom duties when the refiner imports raw sugar into the United States. After paying these custom duties, the same refiner may obtain a 99% refund or drawback of the duties previously paid. In order to be eligible for these drawbacks, refiners or their agents, must export the previously imported raw sugar in a manufactured condition. Moreover, the refiner must send documents, including bills of lading evidencing export of sugar to eligible countries, to appropriate U.S. Customs Departments.

### B. Criminal Proceedings
### Statement of Facts

On November 15, 1985, a grand jury indicted Arthur Green, individually, Barry Adelberg, individually and Southern Commodity Corp. with a 91 count indictment. Count 1, the general conspiracy count, charged that beginning from as early as April 1, 1981 and continuing up to and including June 30, 1984, Green and Adelberg, SCC's Vice President, conspired to defraud sugar refiners and created false documents for the purpose of fraudulently obtaining customs duty drawbacks in violation of Title 18 U.S.C. § 371. Counts 3, 4, 5 and 6 charged Green and Adelberg with knowingly and willfully making and causing to be filed false export documents well known by Green and Adelberg to be ineligible for drawback for the purpose of obtaining drawbacks for themselves and others in violation of Title 18 U.S.C. § 550 and 2.

On December 16, 1985, Green pled guilty to Counts 1, 3, 4, 5, and 6 respectively. Green was represented by competent counsel throughout the entire criminal proceeding, including the plea hearing before U.S. District Judge Sidney Aronovitz. (Green's plea hearing transcript, pp. 29–30.) After the Government made its proffer of evidence, Green knowingly and voluntarily acknowledged his guilt as to Counts 1, 3, 4, 5 and 6. Judge Aronovitz afforded Green every procedural safeguard mandated during the plea hearing. After instructing Green of his constitutional rights, Judge Aronovitz found the existence of a factual basis for Green's guilty pleas.

As stated above, Green's guilty plea covered his criminal acts "beginning as early as April 1, 1981 and continuing up to and including June 30, 1984." (See Indictment against Green, Count 29.) During all times Green negotiated contracts for purchase and subsequent exporting of sugar from RSI, he was engaged in self-proclaimed criminal acts. In fact, Green's criminally fraudulent acts directed towards Amstar Inc. laid the foundation enabling Green to defraud another unsuspecting victim, RSI.

In July, 1988, Green negotiated contracts for the sale and purchase of sugar with RSI through Spencer Fuchs, after learning of SSC's contractual relationship with Amstar. (Green's deposition p. 82, lines 5–23.) In order to induce RSI into selling sugar to SCC at a reduced price, Green carefully explained to RSI the contractual relationship between RSI and Amstar. (Green's deposition, pp. 82–83.) Green explained

that he purchased sugar from Amstar at a reduced price and then exported that same sugar or an equivalent amount. He would then forward the proper export documents to Amstar to make them eligible for duty drawbacks. (Green's deposition, pp. 82–83.)

In response, Fuchs told Green that he would contact RSI and see if they were interested in doing business "on the same basis." *Id.* RSI was interested in doing business with SCC and Green on the same basis as Green was doing business with Amstar and entered into 32 contracts based upon this fraudulent misrepresentation. At all times during negotiations with RSI, Green knew that he was submitting false documents to Amstar. But for these fraudulent misrepresentations, Green and RSI would not have intentionally entered into a contracted relationship.

## II.

## LEGAL ANALYSIS

### A. Overview of Preclusion

■■■ "Res judicata" and "Collateral Estoppel" are twin doctrines employed to prevent litigation of questions of fact and law previously adjudicated. Res judicata or claim preclusion refers to the "preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit." *Durbin v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir.1986); *see Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Collateral estoppel or issue preclusion forecloses relitigation of issues of fact and law previously decided in a prior suit. *Id.* at 1541. Unlike res judicata, collateral estoppel is not limited to the parties and their privies in the prior case. "A defendant who was not a party to the original action may invoke collateral estoppel against the plaintiff." *Hart v. Yamaha*, 787 F.2d 1468, 1473 (11th Cir.1986); *Cotton States Mutual Insurance Co. v. Anderson*, 749 F.2d 663, 666 (11th Cir.1984). Res judicata and collateral estoppel protect litigants from the burden of relitigating an issue of fact or law previously adjudicated. Both doctrines promote the conservation of judicial resources by preventing needless litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 58 L.Ed.2 522, 90 S.Ct. 645 (1979).

The principle of collateral estoppel is "as appropriate to those decisions of criminal courts as to those of civil jurisdiction." *Emlich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). In this Circuit, the use of a criminal conviction as conclusive of an issue in subsequent civil litigation is well established. *Wolfson v. Baker*, 623 F.2d 1074, 1080 (5th Cir.1980), *cert. denied* 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981); *see also Matter of Raiford v. Abney*, 695 F.2d 521, 523 (11th Cir.1983). Use of a criminal conviction is well justified because of the higher standard of proof and greater procedural protections attaching to a defendant in a criminal prosecution. As a result, a criminal conviction possesses substantial indicia of trustworthiness and is a sufficiently reliable determination of the relevant issues. *Matter of Raiford*, at 523, citing 1B J. Moore & T. Currier, Moore's Federal Practice, 0.418(1) at 2703.

■■■ Moreover, a judgment based on a guilty plea is given the same collateral effect as any other criminal conviction, conclusive of all issues that would have been resolved by a conviction following a contested jury trial. 1B J. Moore & T. Currier, at 2706, *Matter of Raiford*, at 523, *U.S. v. Killough*, 848 F.2d 1523 (11th Cir.1988). The rationale behind such a rule is clear: Even though a guilty plea eliminates the need for a contested trial on the merits, a federal court cannot enter a judgment upon a guilty plea unless satisfied that a factual basis exists for it. Fed.R.Crim.P. 11(f). Moreover, a criminal defendant wishing to avoid the collateral effect of a guilty plea has the option of pleading nolo contendre in lieu of pleading guilty. Fed.R.Crim 11(b) and advisory committee note; Fed.R.Evid. 803(22); *Matter of Raiford*, at 523.

The prerequisites to the application of collateral estoppel are well established:

1. The issue at stake must be identical to the one involved in the prior litigation;

2. the issue must have been actually litigated in the prior suit;

3. the determination of the issue in the prior litigation must have been a critical and necessary part of the judgement in that action; and

4. the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Hart v. Yamaha*, at 1473.

■ Based upon our review of the record, we conclude that Arthur Green's conspiracy to defraud sugar refiners and the United States by the creation and submission of fraudulent export documents *included his fraudulent acts perpetrated against RSI*. Arthur Green provides the most damaging evidence linking RSI as a target and a victim of his criminal conspiracy. In Green's deposition, he readily admits that his submission of false bills of lading to Amstar, Colonial and RSI were virtually identical. (Green's deposition, pp. 82, 91, 211 and 212.)

Bruce Adelberg, SCC's Vice President in charge of exports, testified that Green fraudulently induced RSI to sell them sugar at substantially lower prices based upon fraudulent misrepresentations. (See Affidavit of Adelberg.) Adelberg further testified that Green submitted false documents to prolong his ongoing fraudulent scheme. *Id.* According to Adelberg, Green misrepresented to RSI that he had exported sugar when, in fact, he had exported other commodities. *Id.* Moreover, testimony by Charlene Heagney, Green's personal secretary, corroborates both Green's and Adelberg's depiction of the facts. (See Affidavit of Heagney.) Green's guilty plea, plus the extensive discovery in this case, confirms that Green's fraudulent scheme included RSI. The four prong test to establish collateral estoppel has been satisfied.

While the prerequisites for collateral estoppel have been met, the Supreme Court has cautioned that it may be unfair to employ offensive collateral estoppel against a party who did not have the incentive to litigate the issue fully in the first proceeding. *Parklane* at 330. Because of the nature of the offense to which Green pled guilty, the Defendant could have or should have anticipated that his conviction would be used against him in subsequent civil proceedings resulting from the fraudulent scheme. *Cf., Parklane Hosiery Co. v. Shore*, 439 U.S. at 322 (declaring that the foreseeability of subsequent civil suits that typically follow a successful Government prosecution gives the Defendant every incentive to fully and vigorously litigate.)

Application of collateral estoppel in the present case is not unfair because Arthur Green had every opportunity to establish his innocence in the prior criminal proceeding. Furthermore, Green's plea of guilty was the result of a plea agreement. As part of the agreement, the Defendant received substantial benefits in his criminal case. Many of the charges were dismissed. Green was permitted to provide cooperation in the prosecution of co-defendants. All of these benefits led directly to a three years penal sentence for a multi-million dollar fraud. Having received the benefit of his guilty plea in the criminal case, the Court will not permit Green to avoid the civil consequences in this proceeding. In the instant case, collateral estoppel is that consequence.

### B. Application to Green

Under Florida law, the elements of a cause of action for fraud in the inducement are:

1. The defendant falsely represented a specific material fact,

2. The defendant knew, or should have known, that the representation was false, or that defendant made the representation without knowledge of its truth or falsity,

3. The defendant intended to induce the plaintiff to act on the representation, and

4. Plaintiff was injured while acting in justifiable reliance on the representation.

*Suntogs of Miami, Inc. v. Burroughs Corp.,* 433 So.2d 581, 585 (Fla. 3d DCA 1983); *See also Cameron v. Outdoor Resorts of America, Inc.,* 608 F.2d 187 (5th Cir.1979).

■ Based upon the collateral effect of Arthur Green's guilty plea, the admissions of Green in his deposition and the uncontroverted evidence, the Court finds that Plaintiff is entitled to summary judgment on Count V. Green fraudulently induced RSI into selling sugar at discount prices, and Defendant's knowing misrepresentations prevented Plaintiff from obtaining duty drawbacks on quantities of sugar from the appropriate departments of the United States Government. Therefore, Plaintiff reasonably relied upon Defendant's misrepresentations to his economic detriment.

Defendant contends that summary judgment should be denied because Green merely misrepresented to Spencer Fuchs, RSI's agent, not directly to the Plaintiff. This argument lacks merit under Florida law.

> It is not necessary that a direct statement be made to the representee in order to give rise to the right to rely upon the statement, for it is immaterial whether it passes through a direct or circuitous channel in reaching him, provided it be made with the intent that it shall reach him and be acted on by the injured party, *Harrel v. Branson,* 344 So.2d 604, 606 (Fla. 1st DCA 1977).

The mere fact that defendant's misrepresentations were communicated to Plaintiff's agent neither negates Defendant's liability nor the propriety of granting summary judgment. *Joseph v. Norman La Porte Realty, Inc.,* 508 So.2d 496, 497 (Fla. 3d DCA 1987). Florida law does not permit an individual to do indirectly what it prohibits that individual from doing directly.

■ The Florida civil theft statute, Section 812.014, provides that:

> (1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent:

> (a) To deprive the other person of a right to the property or a benefit therefrom;

> (b) to appropriate the property to his own use or the use of any person not entitled thereto.

Subsection 812.012(2)(d)(1) defines "obtains or uses" to mean any manner of "conduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception." (Emphasis Added.)

The Florida civil theft statute contains language that is clear and unambiguous. *Roush v. State,* 413 So.2d 15, 19 (Fla.1982). Accordingly, courts interpreting the scope of acts covered by the statute are guided by the primary rule of statutory construction that "unambiguous statutory language must be accorded its plain meaning," *Carson v. Miller,* 370 So.2d 10, 11 (Fla.1979). Applying the plain meaning of Section 812.-014 to the facts of this case, it is clear that the fraudulent misrepresentations conducted by Green constitute theft. *Roush v. State, supra,* at 19.

The mere existence of a contractual relationship does not preclude the applicability of Florida's civil theft statute. Even though Section 812.014 does not apply to a legitimate contractual dispute concerning an ordinary breach of contract, (*see Rosen v. Marlin,* 486 So.2d 623 (Fla. 3d DCA 1986), the fraudulent scheme conducted by Green squarely falls within the confines of the statute. *Roush v. State,* at 19.

### III.

### CONCLUSION

To repeat, the Court will not permit Green to admit his active participation in a criminal conspiracy when such a plea will be in his best interest and subsequently deny his involvement in the same transaction or occurrence in order to avoid civil liability. Accordingly, based upon careful consideration of the record evidence, it is hereby,

ORDERED and ADJUDGED as follows:

1. Plaintiff's Motions for Summary Judgment as to Fraud and Theft are GRANTED.

2. Defendant's Motions for Summary Judgment as to Fraud and Theft are DENIED.

3. The Court will conduct a damage trial to determine compensatory and possible punitive and statutory damages resulting from this ruling granting Plaintiff's Motions for Summary Judgment as to Fraud and Theft. This damage trial is set during the two-week trial calendar period beginning January 16, 1989. All counsel shall appear before the undersigned for a Calendar Call on Wednesday, January 11, 1989 at 9:30 A.M. in Courtroom X, U.S. District Courthouse, 300 N.E. 1st Avenue, Miami, Florida.

4. Plaintiff's causes of action 1, 2, 3, and 4 remaining in their complaint are severed.

5. All discovery pertaining to the instant case is terminated as of the date of this Order.

DONE and ORDERED.