In re Bruce Lee JENNINGS, Debtor.

Brandon J. Maxfield, individually and on behalf of the Estate of Bruce Lee Jennings, Plaintiff,

v.

Quarles & Brady LLP, Quarles & Brady LLP d/b/a Quarles & Brady Streich Lang LLP, and Ned Nashban, Defendants.

Bankruptcy No. 03–4926–3F7.
Adversary No. 06–84.

United States Bankruptcy Court, M.D. Florida.

Oct. 26, 2006.

Gregory A. Anderson, Kelli E Lueckert, AndersonGlenn, LLC, Ponte Vedra Beach, FL, Richard R Thames, Stutsman Thames & Markey, P.A., Jacksonville, FL, for Plaintiff.

Benjamin R. Norris, John J. Dawson, Quarles & Brady Streich Lang LLP, Phoenix, AZ, Daniel Benjamin Rosenthal, Greenberg Traurig, P.A., Ned R. Nashban, Quarles & Brady, LLP, Boca Raton, FL, John A. DeVault, III, R.H. Farnell, II, Bedell Dittmar DeVault Pillans & Coxe PA, Jacksonville, FL, for Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Summary Judgment filed by the Defendants, Quarles & Brady LLP, Quarles & Brady LLP d/b/a Quarles & Brady Streich Lang LLP, and Ned Nashban.

The Plaintiff, Brandon J. Maxfield, commenced this action by filing a Complaint against the Defendants for legal malpractice and breach of fiduciary duty.

Pursuant to the Defendants' Motion for Summary Judgment, the primary issue before the Court is whether the doctrines of res judicata and collateral estoppel preclude the Plaintiff from bringing the malpractice action. According to the Defendants, all of the claims and issues asserted in the Complaint were previously adjudicated in connection with an Order granting Maxfield's Motion to Disqualify Debtors' Counsel and for Disgorgement of Retainer.

Additionally or alternatively, the Defendants assert that the malpractice action is barred because their client had consented to or ratified all of the legal services that they provided.

## Background

The Debtor, Bruce Lee Jennings ("Jennings") filed a petition under Chapter 11 of the Bankruptcy Code on May 14, 2003. On the same day, ten entities that were related to Jennings also filed Chapter 11 petitions.

The related entities are Bryco Arms, a Nevada corporation ("Bryco Arms"), B.L. Jennings, Inc., a Nevada corporation ("B.L.Jennings"), RKB Investments, a California general partnership ("RKB Investments" or "RKB"), The Kimberly K. Jennings California Trust, The Kimberly K. Jennings Nevada Trust, The Rhonda D. Jennings Nevada Trust, The Rhonda D. Jennings California Trust, The Bradley A. Jennings California Trust, and The Bradley A. Jennings Nevada Trust, and Janice Kay Jennings.

Quarles & Brady, LLP and Ned Nashban, Esquire (the Defendants) were the attorneys of record for all of the related debtors at the time that the petitions were filed.

Brandon J. Maxfield (the Plaintiff) is the primary creditor of Jennings' bankruptcy estate. Specifically, Maxfield is the holder of a prepetition judgment against Jennings, Bryco Arms, and B.L. Jennings in an amount that exceeds $24,000,000.

On February 25, 2004, Maxfield filed a Motion to Disqualify Debtors' Counsel and for Disgorgement of Retainer. (Main Case Doc. 423). In the Motion, Maxfield made the following allegations:

1. Pursuant to 11 U.S.C. § 327(a), counsel for a debtor cannot represent interests adverse to the estate. (p. 12).

2. Quarles & Brady, LLP's simultaneous representation of B.L. Jennings, Inc. and Bruce L. Jennings, a secured creditor, is impermissible. (p. 14).

3. Quarles & Brady, LLP's simultaneous representation of corporate debtors and their shareholders renders them not "disinterested." (p. 16).

4. The fraudulent transfer, alter ego and partnership claims among the debtors prohibits Quarles & Brady, LLP from representing all of the debtor entities. (p. 20).

5. Quarles & Brady, LLP's rendition of asset protection advice to Bruce L. Jennings disqualifies it from representing Bruce L. Jennings' bankruptcy estate. (p. 22).

6. Quarles & Brady, LLP failed to disclose the actual and potential conflicts of interest among the estates and the fact that it rendered asset protection advice to Jennings. (p. 25).

7. Disgorgement of all fees paid to Quarles & Brady, LLP in contemplation or in connection with these Chapter 11 proceedings is required. (p. 30).

In the Motion, Maxfield alleged that the case presented many instances of undisclosed conflicts of interest in connection with the Defendants' representation of

multiple debtors. According to Maxfield, disqualification and disgorgement of fees were the "only appropriate remedies" to address the Defendants' violations of § 327(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure. (p. 32). The request for disgorgement was made pursuant to § 328(c) of the Bankruptcy Code.

On May 19, 2004, Maxfield filed a Motion for Leave to Pursue Designated Claims on Behalf of the Estate. (Main Case Doc. 559). In the Motion, Maxfield requested permission to pursue certain alter ego, constructive trust, and fraudulent transfer claims on behalf of Jennings' bankruptcy estate. Maxfield also requested permission to pursue a malpractice action against the Defendants for the benefit of Jennings' estate. (Main Case Doc. 559, p. 3). The Motion was denied on August 6, 2004. (Main Case Doc. 670).

On November 16, 2004, following two days of evidentiary proceedings, the Court entered its Findings of Fact and Conclusions of Law on Maxfield's Motion to Disqualify and for Disgorgement, and also on the Defendants' First Fee Application. (Main Case Doc. 889).

With respect to the nondisclosures alleged by Maxfield, the Court found:

Quarles & Brady's Rule 2014 disclosure is woefully insufficient because it failed to make the following disclosures:

1. That Jennings was a secured creditor of B.L. Jennings or that Jennings was claiming over $875,000 in back wages from B.L. Jennings.

2. The existence of alter ego claims, constructive trust claims, and joint enterprise liability claims pending against Janice Jennings, RKB and the Trust Debtors even though: a) the consolidation of that litigation was the primary reason for the Chapter 11 filings and b) the possible conflict of interest in representing both sides was specifically addressed in the retention letter.

3. a) that possible claims existed between Bryco and RKB relating to the Bryco–RKB lease and/or the Bryco–Knowlton Lease, the lease revenue rights thereunder which were assigned to RKB, and b) the circumstances surrounding the payment of a $337,507.20 security deposit by RKB on Bryco's behalf.

4. That Quarles & Brady had performed estate planning work for Jennings during 2002.

(Main Case Doc. 889, p. 8).

With respect to the conflicts alleged by Maxfield, the Court found that "Quarles & Brady's simultaneous representation of B.L. Jennings and Jennings renders them not disinterested." Specifically, the Court noted that "B.L. Jennings' schedules indicate that Jennings holds a secured claim against B.L. Jennings for a loan to B.L. Jennings in the amount of $1,404,000.00. The existence of this interrelated debt forces Quarles & Brady to wear 'two hats.'" (Main Case Doc. 889, p. 10). The Court further found that "Jennings' security interests in B.L. Jennings pre-petition assets were essentially wiped out through Quarles & Brady's inaction. Because the creditor constituency of Jennings individually is entirely different than the creditor constituency of B.L. Jennings, Jennings' creditor constituency suffered a loss." (Main Case Doc. 889, p. 11).

The Court also found that conflicts existed because of Quarles & Brady's simultaneous representation of Jennings and RKB, and RKB and Bryco. (Main Case Doc. 889, p. 12).

Based on the evidence and findings described above, therefore, the Court concluded that:

Quarles & Brady's initial and continuing violation of the disclosure rules coupled with its non-disinterestedness warrants its disqualification in all of these related cases. The Court finds that Quarles & Brady's initial and continuing violation of the disclosure rules, its non-disinterestedness, and the injury to Debtors resulting from its inability to independently evaluate the various claims, transfers, and interests in these related cases warrants: 1) a complete denial of compensation in these cases and 2) disgorgement of any pre-petition retainer.

(Main Case Doc. 889, p. 13). The Court also entered a separate Order Granting Motion to Disqualify

Debtors' Counsel and for Disgorgement of Retainer. (Main Case Doc. 890). On December 29, 2004, Maxfield filed a Renewed Motion for Leave to Pursue Designated Claims on Behalf of the Estate. (Main Case Doc. 946).

On March 24, 2005, the Court entered an Order Authorizing Brandon J. Maxfield to Pursue Malpractice Claims on Behalf of the Estate of Bruce Lee Jennings. (Main Case Doc. 1145). In the Order, the Court granted Maxfield's Motion "for leave to pursue claims on behalf of the estate." and determined that Maxfield was "authorized, but not required, to pursue any and all claims which the estate of Bruce L. Jennings may hold against Quarles & Brady arising out of their representation of Mr. Jennings."

On May 13, 2005, Maxfield filed a Complaint against the Defendants. The Complaint was filed by Maxfield "individually, and on behalf of the Estate of Bruce Lee Jennings." (Adv.Doc. 6).

Count I of the Complaint is an action for legal malpractice. In Count I, Maxfield alleges that the Defendants breached their reasonable duty of care to Jennings' Estate in three respects: First. Maxfield alleges that the Defendants represented Jennings' estate and the estates of the other Debtors simultaneously, even though conflicts of interest existed between the various estates; second. Maxfield alleges that the Defendants failed to seek adequate protection from B.L. Jennings for the claims that Jennings' estate held against B.L. Jennings' assets; and third, Maxfield alleges that the Defendants failed to timely file a proof of claim against RKB. (Complaint, Adv.Doc, 6, p. 4).

Count II of the Complaint is an action for breach of fiduciary duty. In Count II, Maxfield alleges that the Defendants breached their fiduciary duty of care to Jennings' Estate by essentially the same conduct that was alleged in Count I. (Complaint, Adv.Doc. 6, p. 7).

Both Counts also contain separate allegations that the Defendants breached their duty to Maxfield individually, by filing an action for declaratory judgment on behalf of the related debtors, by failing to seek adequate protection of Jennings' estate's interest in the assets of B.L. Jennings, and by failing to file a timely proof of claim against RKB. (Complaint, Adv.Doc. 6, pp. 4–5, 7).

In both Counts, Maxfield seeks an award of compensatory damages, prejudgment interest, postjudgment interest, and costs of the proceeding. (Complaint, Adv. Doc. 6, pp. 5, 7).

The Defendants subsequently filed the Motion for Summary Judgment that is currently under consideration. (Adv.Doc. 47). In the Motion, the Defendants contend that the doctrines of collateral estoppel and res judicata preclude Maxfield from asserting the claims set forth in the malpractice action. The essence of the Defendants' theory is set forth on page 10 of the Motion:

Here, just as in *Southmark*, the issues of (a) damage to the Bruce Jennings estate, and (b) the appropriate sanctions against the Q & B Parties, already have been presented to and considered by the courts in the litigation over the Motion for Sanctions in determining the amount and nature of the sanctions that were imposed on the Q & B Parties in that earlier litigation. The alleged damage to the estate of Bruce Jennings already having been the basis for an award against the Q & B Parties in that earlier litigation, it cannot be a basis for this second action, which seeks a further award against the Q & B Parties for the exact same actions.

(Adv.Doc. 47, p. 10). The "Motion for Sanctions" referred to in this paragraph is the Motion to Disqualify Debtors' Counsel and for Disgorgement of Retainer filed by Maxfield in the main case. (Adv.Doc. 47, p. 3).

Further, the Defendants also contend that they are entitled to the entry of a summary judgment in their favor because all of the acts described in the Complaint were taken "at the direction and/or with the consent of the debtor-in-possession at the time, Bruce Jennings." (Adv.Doc. 47, pp. 1–2).

## Discussion

In the Motion before the Court, the Defendants seek the entry of a summary judgment in their favor on the basis that the doctrines of res judicata and collateral estoppel preclude Maxfield from bringing the malpractice action, and also on the basis that Jennings consented to or ratified all of the actions alleged in the Complaint.

## I. Preclusion

As set forth above, Maxfield previously filed a Motion to Disqualify Debtors' Counsel and for Disgorgement of Retainer (the "Disqualification Motion"). The Court entered an Order on the Disqualification Motion on November 16, 2004. In the Order, the Court terminated the Defendants' representation of Jennings and the related Debtors, and found that the Defendants' conduct warranted a complete denial of compensation and disgorgement of any prepetition retainer.

Maxfield contends that the entry of the prior Order operates as a bar to the claims asserted in the malpractice action currently before the Court, because the facts alleged in the malpractice action are the same as the facts that were raised, litigated, and fully determined in the disqualification proceeding.

## A. The doctrines

The purpose of the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) is "to prevent litigation of matters of law and fact previously adjudicated; they 'promote the conservation of judicial resources by preventing needless litigation.'" *Federal Trade Commission v. Wilcox*, 926 F.Supp. 1091, 1100–01 (S.D.Fla.1995)(quoting *Refined Sugars, Inc. v. Southern Commodity Corp.*, 709 F.Supp. 1117, 1120 (S.D.Fla.1988)).

"*Res judicata*" refers to the "preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit". *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir.1986). "When [res judicata or] claim preclusion does not apply to bar an entire claim or set of claims, the doctrine of collateral estoppel, or issue preclusion, may still prevent the relitigation of particular issues which were actually litigated and decided in a prior suit." *Citibank N.A. v. Data Lease Financial*

*Corp.,* 904 F.2d 1498, 1501 (11th Cir. 1990).

*FTC v. Wilcox,* 926 F.Supp. at 1101.

For an action to be barred under the doctrine of res judicata, the Eleventh Circuit Court of Appeals has held that four elements must be present:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second, the judgment must be final and on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

*In re Atlanta Retail, Inc.,* 456 F.3d 1277, 1285 (11th Cir.2006)(quoting *In re Justice Oaks II,* 898 F.2d 1544, 1550(11th Cir. 1990)).

With respect to the doctrine of collateral estoppel, the Eleventh Circuit Court of Appeals has held that the party relying on the doctrine must show that:

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Christo v. Padgett,* 223 F.3d 1324, 1339 (11th Cir.2000)(quoting *Pleming v. Universal–Rundle Corp.,* 142 F.3d 1354, 1359 (11th Cir.1998)).

■ In this case, the Court finds that the Order on the Disqualification Motion does not preclude Maxfield from bringing this malpractice action, because the claims or issues are not identical in both proceedings, because the parties are not identical in both proceedings, and because Maxfield, in his capacity as representative of the estate, did not have the full and fair opportunity to litigate the malpractice claim in connection with the Disqualification Motion.

### B. The claim or issue

In the Disqualification Motion, Maxfield alleged that the Defendants were not disinterested as required by § 327 of the Bankruptcy Code, and that they had violated the disclosure requirements set forth in Rule 2014 of the Federal Rules of Bankruptcy Procedure.

Section 328(c) of the Bankruptcy Code provides:

**11 USC § 328. Limitation on compensation of professional persons**

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, *the court may deny allowance of compensation for services and reimbursement of expenses* of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, *such professional person is not a disinterested person,* or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c)(Emphasis supplied). Additionally, § 329(b) of the Bankruptcy Code, which specifically governs attorneys who represent debtors, provides that the Court may cancel the agreement between the debtor and the attorney, and may order the return of any payments made to the attorney, if the attorney's compensation is unreasonable or excessive. 11 U.S.C. § 329(b).

In accordance with these provisions, the "Bankruptcy Code empowers the court to deny compensation to a professional who is not disinterested or who holds an interest adverse to the estate 'at any time during such professional person's employment under § 327.'" *In re Rivers,* 167 B.R. 288, 300–01 (Bankr.N.D.Ga.1994).

Neither § 328(c) nor § 329(b) expressly authorizes the court to impose monetary sanctions on an attorney beyond the denial of compensation. It is generally accepted, for example, that the sanction provided by those sections is not measured by the actual harm or injury to the estate. "A court may sanction a professional for disclosure violations regardless of actual harm to the estate." *In re Kings River Resorts, Inc.,* 342 B.R. 76, 85 (Bankr.E.D.Cal.2006)(citing *In re Mehdipour,* 202 B.R. 474, 480 (9th Cir.BAP1996)).

In other words, the sanctions imposed on an attorney for violating the disinterestedness requirement or disclosure rules are not determined by computing the damage to the estate caused by the violation. The reason for the statutory choice of denial of compensation as the sanction apparently rests in the policy underlying the disclosure rules themselves. Violation of the disclosure rules "by a fiduciary in a bankruptcy case damages the public's confidence in judicially supervised reorganizations, whether or not there is actual damage to the estate. Denial of compensation is an appropriate deterrent to such conduct." *In re Rivers,* 167 B.R. at 302.

■ In an action for legal malpractice under Florida law, on the other hand, proof of actual harm is a critical component of the plaintiff's case. It is well-established that the three elements of a claim for legal malpractice are: "(1) that the defendant attorney was employed by the plaintiff; (2) that the defendant attorney neglected a reasonable duty owed to the plaintiff; and (3) that such negligence was the proximate cause of *loss to the plaintiff.*" *Olmsted v. Emmanuel,* 783 So.2d 1122, 1125 (Fla. 1st DCA 2001)(Emphasis supplied). The loss alleged by the plaintiff must be actual and not merely speculative. *Lenahan v. Russell L. Forkey, P.A.,* 702 So.2d 610, 611 (Fla. 4th DCA 1997).

In fact, the existence of a claim for legal malpractice is predicated on the plaintiff's ability to establish "redressable harm." "Redressable harm relates to the third element of a legal malpractice claim—the element of damages." Until redressable harm has been established, "a legal malpractice claim is hypothetical and damages are speculative." *Hold v. Manzini,* 736 So.2d 138, 142 (Fla. 3d DCA 1999) (Citations omitted).

Based on the statutes and authorities discussed above, therefore, it appears that Maxfield was not required in the disqualification proceeding to establish that the estate suffered actual damages as a result of the Defendants' violation of the disinterestedness requirement or the disclosure rules. In order to obtain relief under § 328(c) and § 329(b), Maxfield was required to show only that the Bankruptcy Code's rules regarding the employment of professionals had been broken. The relief available was the termination of the Defendants' employment contract with the Debtors, and the denial of the Defendants' compensation for services provided in the case.

Consequently, Maxfield had little incentive in the disqualification proceeding to fully establish the scope of the economic damage suffered by the estate. Although evidence of the damage may have been introduced during the course of the proceeding, the evidence was incidental to the essential aspects of the Disqualification Motion.

In this respect, the malpractice action presently before the Court differs materially from the prior disqualification proceeding. In the current case, as shown above, Maxfield is required to prove that the estate suffered specific, non-speculative damages as an element of the cause of action. These damages, as the ultimate request for relief in the malpractice action, were not litigated or adjudicated by the Court in the disqualification proceeding.

## C. The parties

As set forth above, for the doctrine of res judicata to apply to a particular case, "there must be identity of both parties or their privies." *In re Atlanta Retail, Inc.*, 456 F.3d at 1285.

Because of the "identity of parties" requirement, the doctrine is not generally applied against a party who appeared in a prior case in a different capacity than he currently appears. The Restatement (Second) of Judgments provides:

**§ 36. Party Appearing in Different Capacities**

(1) A party appears in his individual capacity unless, in his designation as a party or by other manifestation, it is made evident that he appears in some other capacity.

(2) *A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.*

Restatement (Second) of Judgments, § 36(quoted in *In re Southeast Banking Corp.*, 314 B.R. 244, 247 (Bankr.S.D.Fla.2004))(Emphasis supplied).

In *Southeast Banking Corp.*, 314 B.R. at 247–48, the Court declined to apply the doctrine of res judicata in an action involving a former trustee, since the former trustee was appearing in his individual capacity in the current action, but had appeared only in his capacity as trustee in the prior action. In other words, in the prior action, the former trustee had served in a representative capacity for the estate, but in the pending action, his appearance was "for the purpose of advancing his own interests rather than the interests of the estate." *Id.* at 247.

Similarly, the Court in *In re Marlar*, 252 B.R. 743, 757 (8th Cir.BAP2000), found that a trustee who had brought an avoidance action was not in privity with an individual creditor who had previously asserted the same cause of action. In so finding, the Court cited a series of cases holding that a trustee represented the interest of all creditors of the estate, that the creditor body had not been represented in a prior action brought by a single creditor, and that the trustee therefore was not bound by the determination in the prior action. See *In re Fordu*, 201 F.3d 693 (6th Cir.1999); *In re Giorgio*, 62 B.R. 853 (Bankr.D.R.I.1986); and *Coleman v. Alcock*, 272 F.2d 618 (5th Cir.1959).

In this case, Maxfield filed the Disqualification Motion on February 25, 2004, while Jennings' bankruptcy case was pending as a Chapter 11.

It is clear that Maxfield filed the Disqualification Motion solely in his capacity as a creditor of the estate. In its introductory paragraph, for example, the Motion states that "Brandon James Maxfield moves the Court to disqualify Quarles & Brady, LLP as counsel for the debtors in these Chapter 11 proceedings." On page 4 of the Motion, Maxfield describes himself as "the holder of a $24,774,146.53 California judgment against Jennings, B.L. Jennings, and Bryco Arms." (Main Case Doc. 423).

The Disqualification Motion does not contain any indication or manifestation

that Maxfield was filing the Motion in any representative capacity, or in any capacity other than his individual capacity. In fact, the Motion was filed more than one year prior to the entry of the Order authorizing Maxfield to assert any claims against the Defendants on behalf of the bankruptcy estate. (See Main Case Doc. 1145).

Maxfield filed the malpractice action, however, pursuant to the Order authorizing him to pursue the claim "on behalf of the Estate of Bruce Lee Jennings, Debtor." (Main Case Doc. 1145). In that Order, the Court found that "it is appropriate that Mr. Maxfield be permitted to pursue any and all claims against Quarles & Brady on behalf of Bruce Lee Jennings' estate." The Court clearly contemplated that any recovery from the lawsuit would belong to the bankruptcy estate, and not to Maxfield individually.

Maxfield was authorized to file the malpractice action only in a representative capacity, and not in his capacity as an individual creditor. Accordingly, since he is appearing as a representative of the estate, Maxfield as such representative "should be free to take positions inconsistent with those he might assert in litigation on his own behalf." *Restatement (Second) of Judgments,* § 36 cmt. a(quoted in *In re Southeast Banking Corp.,* 314 B.R. at 247).

### D. Full and fair opportunity to litigate

Finally, the Eleventh Circuit has held that "the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Christo v. Padgett,* 223 F.3d at 1339(quoting *Pleming v. Universal–Rundle Corp.,* 142 F.3d at 1359).

The malpractice claims that are the subject of this action are property of the bankruptcy estate. "Claims of malpractice and fraud that arise during the performance of services for a debtor or debtor in possession in a chapter 11 proceeding are property of the bankruptcy estate." *In re Robotic Vision Systems, Inc.,* 343 B.R. 393, 398 (Bankr.D.N.H.2006)(citing *Bezanson v. Thomas,* 402 F.3d 257, 265 (1st Cir.2005) and *Correll v. Equifax Check Servs., Inc.,* 234 B.R. 8, 11 (D.Conn.1997)).

Because the malpractice claim belongs to the estate, Maxfield as an individual creditor could not assert the cause of action without first obtaining permission from the Bankruptcy Court. See, for example, *In re Greenberg,* 266 B.R. 45, 51 (Bankr.E.D.N.Y.2001) and *In re Vogel Van & Storage, Inc.,* 210 B.R. 27, 33–34 (N.D.N.Y.1997) *aff'd* 142 F.3d 571 (2d Cir. 1998).

As shown above, Maxfield was authorized to pursue the malpractice claim on behalf of the estate on March 24, 2005. In order to recover on the malpractice claim, Maxfield must establish that the estate suffered actual, non-speculative damages as a result of the Defendants' conduct.

The Disqualification Motion, however, was filed on February 25, 2004, more than one year before Maxfield was allowed to represent the estate in the malpractice action. In the disqualification proceeding, Maxfield had little incentive to offer proof regarding the actual damages suffered by the estate, because the sanctions authorized by § 328(c) and § 329(b) are not measured by such damages.

It is significant at this point to note that Maxfield did not delay his request for permission to pursue the malpractice claims until after the disqualification proceeding had been concluded. On the contrary, Maxfield filed his initial Motion for Leave to Pursue Designated Claims on Behalf of the Estate on May 19, 2004, while the Disqualification Motion was pending.

(Main Case Doc. 559). The initial Motion for Leave to pursue the malpractice claim was denied on August 6, 2004. (Doc. 670).

Based on the above, the Court finds that Maxfield did not have a "full and fair opportunity to litigate" the malpractice claim in the disqualification proceeding, and therefore should not be precluded from prosecuting this action. Although he had requested permission to prosecute the claim, as required because the claim is property of the bankruptcy estate, the permission had not been granted at the time that the Disqualification Motion was decided. Maxfield, in his representative capacity, has not yet received a forum to prove the entire amount of the damages that might be recoverable from the Defendants for the benefit of the estate.

Further, it is noteworthy that the absence of a "full and fair opportunity to litigate" distinguishes this case from the decision of the Fifth Circuit Court of Appeals in *In re Southmark Corporation,* 163 F.3d 925 (5th Cir.1999). In *Southmark,* the Fifth Circuit declined to apply the doctrine of res judicata to a debtor's malpractice action against a Chapter 11 examiner's accountant. *In re Southmark,* 163 F.3d at 935. Nevertheless, the Fifth Circuit found that the debtor was precluded in the malpractice action from relitigating a prior determination that the accountant's conduct had not caused certain damage to the estate. According to the Fifth Circuit, the causation issue had been determined in a prior disgorgement proceeding.

In reaching this conclusion, however, the Fifth Circuit evaluated the "way in which the disgorgement proceeding was litigated." Specifically, the Fifth Circuit reviewed the extensive factual findings and record in the Bankruptcy Court with respect to the causation issue, and concluded that the issue had been actually litigated in the disgorgement proceeding. *Id.* at 933.

In other words, the debtor in *Southmark* not only had the opportunity to litigate the causation issue in the prior proceeding, but did in fact litigate the issue in the prior proceeding.

Similarly, the Fifth Circuit's decision in *In re Intelogic Trace, Inc.,* 200 F.3d 382 (5th Cir.2000) is also distinguishable from the case before the Court, because the debtor in *Intelogic* had made a tactical decision not to assert certain malpractice claims against an accountant in the prior proceeding. Instead, the debtor chose to use the claims as a "negotiating chip" to obtain a reduction in the accountant's fees. *In re Intelogic,* 200 F.3d at 389. The debtor in Intelogic possessed the "opportunity to litigate," but voluntary relinquished the opportunity as a strategic device.

"The most basic principles of res judicata require that full relief must have been available in the first action in order for the second action to be barred." *In re Atlanta Retail, Inc.,* 456 F.3d at 1287.

In this case, full relief was not available to Maxfield in the disqualification proceeding because Maxfield had not yet been authorized to pursue the malpractice action on behalf of the estate at the time that the Disqualification Motion was decided, and because the remedy provided in the disqualification proceeding consisted of termination of the Defendants' employment and denial of compensation, rather than the monetary damages actually suffered by the estate.

## E. Summary

The doctrines of res judicata and collateral estoppel serve the purpose of preventing the relitigation of matters that have already been adjudicated. *FTC v. Wilcox,* 926 F.Supp. at 1100–01. The Defendants assert that the doctrines preclude Maxfield from prosecuting the malpractice action

that is currently before the Court, because the matters presented in the malpractice action were already considered and decided by the Court in the prior disqualification proceeding.

The Court finds that application of the doctrines is inappropriate in this case, (1) because the ultimate claim for damages is not identical in both proceedings, (2) because Maxfield appeared only as a creditor in the disqualification proceeding, but is appearing as a representative of the estate in the malpractice action, and (3) because Maxfield did not receive a full and fair opportunity to litigate the malpractice claims in the prior proceeding.

Maxfield is not precluded by the doctrines of res judicata or collateral estoppel from pursuing the malpractice action.

## II. Ratification

As an additional or alternative basis for their Motion for Summary Judgment, the Defendants assert that the bankruptcy estate has no right to pursue the malpractice claim against them, because their client "Bruce Jennings [as the debtor-in-possession] had knowledge and was aware of all such actions, and participated in, acquiesced in, and/or ratified all such actions." (Adv.Doc. 47, p. 23).

To support their contention, the Defendants rely in part on Jennings' testimony at the hearing on the Disqualification Motion and the Defendants' First Fee Application. According to the Defendants, Jennings testified on their behalf at that hearing. The Defendants assert, for example, that Jennings "testified that counsel had performed valuable services for the debtor estates and that he was 'quite satisfied' with the performance of Debtors' counsel." (Adv.Doc. 48, p. 11).

The Defendants assert that they acted pursuant to Jennings' direction throughout

the course of their employment, and that they implemented the directions with Jennings' knowledge and approval. (Transcript, pp. 48, 77).

In response, Maxfield asserts that Jennings did not participate in or ratify the Defendants' actions with respect to the assets of B.L. Jennings or RKB. On the contrary, according to Maxfield, Jennings had actually directed the Defendants to use the assets of B.L. Jennings to satisfy the debt owed to him. Maxfield also contends that there is no evidence that Jennings "was ever informed of his obligation, as a fiduciary, to seek the recovery of the money for his individual estate." (Adv. Doc. 51, p. 25).

Maxfield asserts that Jennings could not have ratified the Defendants' conduct because he did not understand his duties or the obligations among the multiple debtors. (Transcript, pp. 62–63).

The Defendants' theory of ratification is premised on the principle that "malpractice actions such as this are barred where the client consented to and participated in the legal strategy pursued by counsel." (Adv.Doc. 47, p. 24).

In this case, the Court finds that Jennings' "consent" and "participation" are issues of fact that are not suitable for summary judgment. The Court cannot determine from the record, for example, whether Jennings had full knowledge of the complex rights and obligations among the related debtors, whether he conveyed specific, informed instructions to the Defendants, or whether he was advised of the scope and consequences of all of the Defendants' services.

The Defendants are not entitled to the entry of a summary judgment in their favor on the theory that Jennings had ratified their conduct.

## Conclusion

This is an action against the Defendants for legal malpractice and breach of fiduciary duty. The Defendants contend that the Plaintiff, Brandon J. Maxfield, is precluded from bringing the action by virtue of an Order Granting Motion to Disqualify Debtors' Counsel and for Disgorgement of Retainer that was previously entered in the main bankruptcy case.

The doctrines of res judicata and collateral estoppel do not preclude Maxfield from pursuing the action, because the claim for damages in the malpractice action is not identical to the claim for relief in the disqualification proceeding, because Maxfield initiated the disqualification proceeding only in his capacity as a creditor, but initiated the malpractice action as a representative of the estate, and because Maxfield did not receive a full and fair opportunity to litigate the malpractice claims in the disqualification proceeding.

Additionally, Maxfield is not barred as a matter of law from prosecuting the malpractice action on the theory that Jennings ratified the Defendants' conduct, because issues of fact exist in this case regarding Jennings' consent to, and participation in, the Defendants' decisions and services as attorneys for the debtors.

Accordingly:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Defendants, Quarles & Brady LLP, Quarles & Brady LLP d/b/a Quarles & Brady Streich Lang LLP, and Ned Nashban, is denied.