[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11178
_____

D.C. Docket No. 4:00-cv-217-CDL


TVPX ARS, INC.,

Plaintiff-Appellant/Cross-Appellee,

versus


GENWORTH LIFE AND ANNUITY INSURANCE COMPANY,

Defendant-Appellee/Cross-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____

(May 26, 2020)

Before MARTIN, NEWSOM, and O'SCANNLAIN,* Circuit Judges.

MARTIN, Circuit Judge:

---

* Honorable Diarmuid F. O'Scannlain, United States Circuit Judge for the Ninth Circuit, sitting by designation.

In 2018, TVPX ARS, Inc. ("TVPX") filed an amended class action complaint in the Eastern District of Virginia against Genworth Life and Annuity Insurance Company ("Genworth").  The amended complaint alleged that Genworth had violated the terms of one of its life insurance policies by imposing inflated "cost of insurance" charges on its insureds.  Genworth brought this action in the Middle District of Georgia (the "District Court"), seeking to enjoin TVPX's Virginia lawsuit and arguing that TVPX's claims were barred by a 2004 agreement settling a prior class action about the same life insurance policies.  The District Court granted Genworth's motion to enjoin TVPX's Virginia action.  It found that TVPX's complaint was barred by the doctrine of res judicata because its claims were premised on a continuation of the same conduct at issue the 2004 settlement.  After careful consideration, and with the benefit of oral argument, we vacate the order enjoining TVPX's Virginia lawsuit and remand for factfinding consistent with this opinion.

## I.

At issue in this appeal are Genworth's flexible premium, universal life insurance policies.  A universal policy is a type of life insurance that, in addition to paying out a death benefit, includes an interest-bearing account that builds cash value during the insured's life. Policyholders can pay premiums into their account to add to the cash value, and Genworth draws monthly deductions from the

2

account's cash value.  So long as the cash value is high enough to cover the following month's deductions, the policy remains in force.  If the cash value is insufficient to cover the next month's deductions, the policy lapses unless the policyholder pays a premium that covers the deficit.  Relevant here, one of Genworth's monthly deductions is a "cost of insurance" charge ("COI"), which, according to Genworth's policy terms, is determined "according to expectations of future mortality."  Often referred to as a "mortality charge," COI is intended to compensate life insurers for the risk that the insured will die in a given policy year.  COI rates are recalculated by Genworth on a monthly basis.

## A. The McBride Class Action

In 2000, Robert McBride filed a putative class action against Genworth, then known as Life Insurance Company of Virginia, over the administration and marketing of its universal life insurance policies.  Complaint, McBride v. Life Insurance Co. of Virginia, No. 4:00-cv-217 (M.D. Ga.) ("McBride"), ECF No. 1-2.[1]  The second amended complaint in McBride (the "McBride complaint"), which was the operative complaint when that case settled, alleged that Genworth deceived customers purchasing universal life policies by representing that their premiums would remain level, vanish, or not be required in the future.  It also alleged that Genworth "wrongfully and improperly" assessed premiums in amounts

---

[1] For the sake of clarity, we refer to Life Insurance Company of Virginia as "Genworth."

higher than the premiums contracted for by the parties by "applying an increased cost of insurance to cash value as policy holders grew older over time."  The McBride complaint further alleged that Genworth engaged in deceptive marketing practices by failing to disclose it charged cost of insurance rates, "or that cost of insurance is determined at the whim or discretion of [Genworth's] management on a monthly basis."

In 2004, the parties entered into a settlement agreement that contained a broad release.  Among other things, class members agreed to release all "past, present and future" causes of action that were "based upon, related to, or connected with, directly or indirectly, in whole or in part (a) the allegations, facts, subjects or issues set forth or raised in the [McBride action] or (b) the Released Conduct." The release also provided that class members were precluded and estopped from bringing any future causes of action "related to in any way, directly or indirectly, in whole or in part (a) the allegations, facts, subjects or issues set forth or raised in the [McBride action] or (b) the Released Conduct, regardless of whether such Causes of Action accrue after the [settlement agreement] is approved."  "Released Conduct" was defined broadly to encompass essentially every aspect of Genworth's universal life policies, including "the design, development, marketing, sale, suitability, administration, servicing, modification, underwriting, lapse, termination, performance, payments, cash values, premiums, cost of insurance

rates and charges, death benefits, coverage, maturity date, policy loans, replacements, commissions, taxes, surrender charges, credited interest, expense charges, or other costs of any Class Policy" (emphasis added).

A court-approved settlement notice was sent to the McBride class members. It described the issues in the lawsuit, including the allegation that Genworth breached the insurance policy by "increasing policy charges, including cost of insurance rates."  The notice also said that if class members did not opt out of the McBride settlement agreement, they might surrender claims relating to "cost of insurance charges" and "cost of insurance rates."

No class members objected to the settlement, and only 652 of over 350,000 total class members opted out.  The final judgment, which adopted the McBride settlement, said the terms of the settlement would be "forever binding on the Plaintiffs, all other Class Members and all Releasors, and shall have res judicata and other preclusive effect in all pending and future claims, lawsuits or other proceedings . . . to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in this Action or are otherwise encompassed by the Release."

Also relevant to this appeal, the McBride settlement provided that "Nothing in this Agreement shall prevent [Genworth] from increasing any Class Member's monthly policy deductions (i.e., the monthly cost of insurance charges and

expenses of the Class Policy) in accordance with Pre-Settlement Policy Administration." The definition of Pre-Settlement Policy Administration ("PSPA") states that Genworth will

> administer a Class Member's Class Policy in the same manner that [Genworth] administered flexible premium adjustable life insurance policies prior to the Settlement. In particular, [Genworth] will administer a Class Member's Class Policy in accordance with the terms of such policy and in accordance with [Genworth]'s interpretation of that policy's provisions, such that the policy will stay in force only so long as the Class Policy's cash value or cash value less surrender charges (whichever is applicable in the particular Class Policy) is sufficient to cover the monthly deductions (i.e. the monthly cost of insurance charges and expenses of the Class Policy), and that a Class Member may have to pay premiums in an amount or at a frequency greater than the Planned Premium or any other premium that the Class Member was paying or expected to pay in order to keep his/her Class Policy from lapsing.

### B. The TVPX Class Action

TVPX purchased a Genworth life insurance policy for Lucius Whitaker in 2017. The policy was originally issued in 1984, with Arlene Whitaker as the policy owner and Lucius Whitaker as the insured. In 2018, TVPX filed a putative class action against Genworth in the Eastern District of Virginia, alleging that Genworth had breached its insurance policies by failing to calculate COI rates in accordance with mortality expectations. In TVPX's original complaint, it alleged that Genworth had "left its COI rates unchanged for decades," notwithstanding the fact that mortality expectations had improved significantly. The complaint cited "mortality tables" published by the Society of Actuaries and the American

6

Academy of Actuaries which showed that mortality rates that improved at a rate of roughly 1% each year over the past three decades. TVPX asserted that, "[d]espite these continuously improved mortality expectations . . . Genworth has never once lowered the COI rates it charges its customers.

TVPX amended its complaint, and the new complaint largely mirrored its original complaint, with two key differences. First, the amended complaint narrowed the class period to the five years leading up to the amended complaint, i.e. from 2013 through 2018. Second, TVPX deleted its allegation that Genworth had "left its COI rates unchanged for decades," and instead charged that Genworth actually increased its COI rates from 2013 through 2018, even though mortality expectations improved during that same time period.

## C. District Court Proceedings

After TVPX filed its original complaint, Genworth filed a motion to dismiss and a motion to stay in the Eastern District of Virginia. At the same time, Genworth filed a motion in the Middle District of Georgia seeking to enjoin TVPX's Virginia action under the All Writs Act, 28 U.S.C. § 1651(a).[2] In its motion to enjoin, Genworth argued that TVPX's complaint was precluded by the

---

[2] The All Writs Act grants district courts jurisdiction to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Under this statute, a district court may "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." United States v. N.Y. Tel. Co., 434 U.S. 159, 172, 98 S. Ct. 364, 372 (1977).

2004 settlement and release because the two cases arose from the same factual predicate. That is, Genworth asserted that whatever violations TVPX alleged about its COI rates was merely a continuation of conduct Genworth was engaging in at the time of the McBride settlement. Such conduct, according to Genworth, was therefore necessarily covered by the McBride release. Separately, Genworth filed a motion for leave to file a counterclaim against TVPX for breaching the McBride settlement's covenant not to sue.

TVPX made two arguments in response to Genworth's motion to enforce. First, it said the PSPA "carves out" a class member's right to bring the claims raised in TVPX's complaint by requiring Genworth to "administer a Class Member's Class Policy in accordance with the terms of such policy." And second, TVPX argued that the McBride complaint could not preclude TVPX's complaint because the McBride action "target[ed] disparate rights, duties, and time frames creating different facts and legal conclusions."

The District Court granted Genworth's motion to enjoin on res judicata grounds. It found that TVPX's Virginia complaint was premised on a continuation of the same conduct that was at issue in McBride. If Genworth was engaging in the same conduct in 2004, the District Court reasoned, then TVPX's complaint was necessarily precluded by the McBride settlement and judgment. The District Court rejected TVPX's argument that its claims were preserved by the PSPA. It found to

8

the contrary that the PSPA allowed Genworth to "continue what it had been doing" with regard to monthly deductions such as cost of insurance.  Finally, the District Court denied Genworth's motion for leave to file a counterclaim on futility grounds.  This appeal followed.

## II.

"In reviewing the district court's decision to grant an injunction, including an injunction under the All Writs Act, we apply an abuse-of-discretion standard." Adams v. S. Farm Bureau Life Ins. Co., 493 F.3d 1276, 1285 (11th Cir. 2007) (quotation marks omitted).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous."  Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096 (11th Cir. 2004) (quotation marks omitted).  A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985) (quotation marks omitted).  And while we review the grant of an injunction for an abuse of discretion, underlying questions of law are nevertheless reviewed de novo.  Adams, 493 F.3d at 1285.

9

## III.

On appeal, TVPX says its claims arise from a different factual predicate than the claims in McBride, and thus are not barred by res judicata. Alternatively, TVPX says the District Court order turned on the impermissible factual finding that Genworth was engaged in the same conduct during the McBride action. TVPX argues that because there was no evidence supporting such a finding, our Court must, at a minimum, remand for discovery on that issue. Second, TVPX says the PSPA expressly reserved TVPX's right to bring claims raised in its complaint. Genworth responds that TVPX's complaint is not only barred under res judicata, but also by a straightforward application of the McBride release.

### A.    Res Judicata

To invoke res judicata—also called claim preclusion—a party must establish four elements: that the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action. Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1269 (11th Cir. 2002). Here, the dispute is about the fourth element, which asks whether a case "arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action." Griswold v. County of Hillsborough, 598 F.3d 1289, 1293 (11th Cir. 2010) (quotation marks omitted). This Court has recognized that res judicata applies not only to the precise legal

10

theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.  Trustmark, 299 F.3d at 1270 n.3.  When determining whether two cases arise out of a common nucleus of fact, "the analysis centers on whether the primary right and duty are the same."  Adams, 493 F.3d at 1289 (quotation marks omitted).  Beyond that, "[t]he most basic principles of res judicata require that full relief must have been available in the first action in order for the second action to be barred."  In re Atlanta Retail, Inc., 456 F.3d 1277, 1287 (11th Cir. 2006); see also Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir. 1992) (explaining that res judicata bars only those claims that "could have been brought" in the original proceeding).  These principles apply with equal force when considering the preclusive effect of a prior class action settlement agreement.  Adams, 493 F.3d at 1290–91.

1.    The primary right and duty at issue in TVPX's complaint were also at issue in *McBride*.

We reject TVPX's argument that the rights and duties at issue in its complaint were not at issue in McBride.  TVPX says the two actions are qualitatively distinct because McBride "was about sales practices, marketing, and misrepresentations made to induce people to buy the policies," whereas TVPX's claims address only Genworth's COI practices.  Br. of Appellant/Cross-Appellee at 27.  But the McBride action was not so circumscribed.  While it is true that the McBride complaint focused on Genworth's misleading marketing practices, it also

11

alleged that Genworth breached its insurance policies by assessing premiums in amounts higher than the premiums contracted for by the parties. And one of the mechanisms by which Genworth overcharged its policyholders, according to the McBride complaint, was by "applying an increased cost of insurance to cash value as policy holders grew older over time."

When assessing the res judicata effect of a prior action, we are not limited to the allegations raised in a prior complaint. See Adams, 493 F.3d at 1290–91 (determining res judicata effect of prior settlement by examining complaint, class notice, and settlement). We may also consider the parties' settlement documents to determine the claims at issue in a prior action. See id. The McBride settlement agreement said class members released Genworth from any causes of action "related to or connected in any way with" various aspects of Genworth's universal life policies, including "cost of insurance rates and charges." The class notice also indicated that one of the issues in McBride was the allegation that Genworth breached the insurance policy by "increasing policy charges, including cost of insurance rates."

This Court confronted a similar scenario in Adams, which was a lawsuit over deceptive marketing related to "'increasing premium' insurance policies— that is, claims based on [an insurer's] failure to disclose that their policy premiums might increase in the event interest rates turned out to be lower than those

12

projected." 493 F.3d at 1289. The defendant insurer argued these claims were precluded by a prior class action in which the plaintiffs alleged fraud with respect to "'vanishing premium' policies, that is, where the policy holder expected the premium to disappear once the cash value was large enough to cover the required premiums." Id. Notwithstanding the plaintiffs' attempt to distinguish "increasing premium" policies from "vanishing premium" policies, a panel of this Court found the two actions concerned the same "primary right and duty" because the original class action alleged an "overarching scheme of fraud and deception by [the insurer] in connection with the sale of these flexible premium types of policies." Id. at 1290. Similarly, the McBride complaint, settlement, and class notice, when taken together, establish that McBride was not limited only to Genworth's marketing practices. Rather, it encompassed an "overarching scheme of fraud and deception" that extended to the manner in which Genworth administered various aspects of its universal life policies, including COI. Id. Precisely the same primary right and duty are at issue in TVPX's action.

> 2.    The record does not support the District Court's finding that Genworth's COI practices remain unchanged since *McBride*.

For res judicata to apply, however, it is not enough that the prior action encompassed the same primary rights and duties as the subsequent complaint. The plaintiff must have also been capable of bringing the same claims in the first action. See In re Atlanta Retail, 456 F.3d at 1287. For this reason, a class release

13

may not preclude a subsequent action unless "the released conduct arises out of the 'identical factual predicate' as the claims at issue in the case."  6 Newberg on Class Actions § 18:19 (5th ed. updated Dec. 2019).  And an "identical factual predicate" cannot exist unless the defendant was engaged in the same offending conduct during the prior action.  See Kilgoar v. Colbert Cty. Bd. of Educ., 578 F.2d 1033, 1035 (5th Cir. 1978) ("Subsequent conduct, even if it is of the same nature as the conduct complained of in a prior lawsuit, may give rise to an entirely separate cause of action.")[3]; Manning, 953 F.2d at 1359 (holding that a common nucleus of fact cannot exist where there has been a "modification of significant facts creating new legal conditions" between the first and second suit).

TVPX's amended complaint alleges that from 2013 through 2018, Genworth calculated COI in a way not consistent with mortality expectations.  The operative complaint says nothing about whether Genworth's COI charges were similarly untethered to mortality expectations prior to the class period.  Nevertheless, the District Court found that TVPX's lawsuit was premised on "a continuation of the same conduct" occurring during the McBride action.  This finding was based solely on the McBride complaint's allegation that Genworth engaged in deceptive marketing practices by failing to "disclose" or "illustrate" that "cost of insurance is

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

determined at the whim or discretion of [Genworth's] management on a monthly basis." According to the District Court, this allegation established that Genworth was calculating COI "on something other than the insured's . . . expectations of future mortality" at the time of the McBride action.

This record does not support this finding. The allegation relied on by the District Court expressly referred to Genworth's marketing practices. It says nothing about how Genworth actually calculated COI at the time of the McBride settlement. Indeed, Genworth itself has disclaimed the suggestion that it has imposed or can impose "any [COI] rates it wants on a whim." Br. of Appellee/Cross-Appellant at 26. Therefore, the District Court's reliance on this allegation in the McBride complaint was misplaced.

Genworth argues that the District Court's finding is supported by TVPX's allegation, in its initial complaint (since amended), that Genworth "left its COI rates unchanged for decades." Genworth characterizes this as an "admission" by TVPX that its claims are based on a continuation of the same COI-related practices that existed at the time of the McBride complaint. Id. at 30. However, TVPX amended its complaint and deleted this allegation. The operative complaint alleges that Genworth's COI rates increased each year from 2013 through 2018. And of course, an amended complaint "supersede[s] the former pleadings." Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016). Once an amended complaint

15

is filed, the original pleadings are considered "abandoned" and are "no longer a part of [the plaintiff's] averments." Id. Genworth is therefore incorrect that TVPX admitted that Genworth had the same COI rate for "decades."[4] And as Genworth conceded during oral argument, there is nothing else in the record to indicate that the way Genworth calculates and charges COI has remained unchanged since the McBride action. Oral Argument at 20:25–21:06 (Apr. 21, 2020).

Because there is nothing in the record to suggest that Genworth's COI-related practices have remained the same since McBride, Genworth gets no help from Freeman v. MML Bay State Life Insurance Company, 445 F. App'x 577 (3d Cir. 2011) (unpublished). The plaintiff in that case brought a class action against a life insurance company, alleging that it was "breaching the terms of [its policy] on a monthly basis by deducting as mortality charges, amounts unrelated to mortality." Id. at 579. The defendant moved for summary judgment, arguing that plaintiff's claims were barred by a prior class settlement that released claims "related to . . . cost of insurance." Id. at 578. The district court granted the motion, and the Third Circuit affirmed after concluding that the two cases had the "same factual predicate." Id. at 580. While Freeman bears similarities to this case, it differs in one material respect. The complaint in Freeman "allege[d] that the

---

[4] During oral argument on Genworth's motion to enjoin, TVPX acknowledged that it amended this allegation after realizing it was "factually incorrect."

16

actions presently complained of (i.e. monthly breaches of contract with respect to mortality charges) were occurring as early as 1999, which was during the [previous] class period." Id. Here, by contrast, there is nothing in the record to indicate that Genworth engaged in the same offending conduct during the McBride class period. Freeman is therefore inapposite.

Because the record is not sufficient to support a finding that Genworth's COI-related practices have remained unchanged since the McBride action, the District Court abused its discretion in so finding.[5] Where the record at the pleading stage was insufficient to determine whether a prior action bars a current complaint under res judicata, we have remanded to the district court for further factual development. See Concordia v. Bendekovic, 693 F.2d 1073, 1074, 1076 (11th Cir. 1982) (vacating and remanding "[i]n view of the insufficiency of the record" on whether, in the previous action, an issue was "actually litigated" and whether final judgment was rendered); Baloco ex rel. Tapia v. Drummond Co., 640 F.3d 1338, 1351 (11th Cir. 2011) (reversing and remanding for "further factual development as to the scope, if any, of the [plaintiffs'] involvement in" the

---

[5] Genworth says that even if the District Court abused its discretion in concluding that TVPX's claims were barred under the doctrine of res judicata, we may nevertheless affirm under the doctrine of release. Br. of Appellee/Cross-Appellant at 16. Even assuming a class settlement can independently foreclose a subsequent action under the doctrine of release, Genworth recognizes that the key question is whether the prior release and the new complaint arise from an "identical factual predicate." Id. at 18. The existing record does not allow us to make that determination.

17

prior litigation). Consistent with our past practice, we remand to the District Court for limited discovery on whether Genworth has in any way changed how it calculates and charges COI since the McBride settlement.[6]

## B. Pre-Settlement Policy Administration

Finally, we address TVPX's argument that the PSPA expressly reserved its claims by requiring Genworth to "administer a Class Member's Class Policy in accordance with the terms of such policy." TVPX's reading of this clause—as preserving a class member's right to sue Genworth for any alleged breach of its universal life policy—is a strained one. We conclude instead that the PSPA merely preserves Genworth's right to administer its policies in the same manner as it had before the McBride settlement.

As part of a settlement agreement, a party may expressly reserve the right to sue on a particular claim in the future. Cf. Norfolk S. Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1290 (11th Cir. 2004). In determining whether such a

---

[6] Genworth claims TVPX failed to preserve its argument that discovery was needed before the District Court could find that Genworth's COI-related conduct had remained unchanged. This argument fails for at least a couple of reasons. During oral argument before the District Court on Genworth's motion to enforce, TVPX said that any finding on whether Genworth was handling COI charges in the same manner now as they did before was "at worst . . . a factual dispute . . . that cannot be decided on the pleadings." Nor are we persuaded by Genworth's argument that remand is unwarranted because TVPX did not formally move for discovery in the District Court. Res judicata is an affirmative defense under Federal Rule of Civil Procedure 8. Concordia, 693 F.2d at 1075. The burden to seek discovery on this topic therefore would have been on Genworth, as the moving party, rather than TVPX. See In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001) ("At all times the burden is on the party asserting res judicata . . . .").

reservation has been made, we interpret the settlement agreement according to traditional principles of contract law. Id. at 1289–90. Here, the McBride parties agreed that their settlement would be interpreted under Virginia law. Under Virginia rules of contract interpretation, contract terms are read in context, see Babcock & Wilcox Co. v. Areva NP, Inc., 788 S.E.2d 237, 244 (Va. 2016), and courts must attempt to give effect to the entire contract, see Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 709 S.E.2d 163, 170 (Va. 2011).

TVPX's proposed construction of the PSPA violates these basic principles of contract interpretation. If, as TVPX claims, the PSPA reserves a class member's right to sue Genworth for any alleged policy violation, the PSPA would render much of the McBride release inoperable. Under TVPX's interpretation, class members could sue Genworth for the precise policy violations at issue in McBride, so long as those alleged violations continued beyond the date of the McBride settlement agreement. This is directly at odds with the settlement's release of all "past, present and future" causes of action related to Genworth's administration of its policies.

Beyond that, TVPX reads the phrase, "in accordance with the terms of such policy," out of context. The PSPA provides that Genworth will "administer a Class Member's Class Policy in the same manner that [it] administered flexible

19

premium adjustable life insurance policies prior to the settlement." This means, "[i]n particular," that Genworth will "administer a Class Member's Class Policy in accordance with the terms of such policy and in accordance with [Genworth]'s interpretation of that policy's provisions, such that the policy will stay in force only so long as the Class Policy's cash value . . . is sufficient to cover the monthly deductions . . . , and that a Class Member may have to pay [higher or more frequent] premiums" than "the Class Member was paying or expected to pay in order to keep his/her Class Policy from lapsing."

To the extent the PSPA says Genworth will administer policies "in accordance with the terms of such policy," the rest of the PSPA makes clear that those "terms" refer to Genworth's right to continue charging monthly deductions and to lapse a policy if the policyholder does not cover the monthly deductions. Whether Genworth was permitted to impose monthly deductions on its policyholders (and whether the failure to pay those deductions would result in the cancellation of a policy) was a central dispute in McBride, and the PSPA appears to resolve it in Genworth's favor. When read in its entirety, therefore, the PSPA does not constitute a preservation of rights, but instead clarifies that Genworth may continue administering its policies in the same manner that it did before the settlement.

20

**IV.**

For these reasons, we **VACATE** the District Court's order enjoining

TVPX's complaint.  We **REMAND** for further factual development of whether

Genworth has in any way altered how it calculates or charges COI since the

McBride settlement.[7]

---

[7] We do not reach Genworth's argument on cross-appeal that the District Court erred in denying its motion for leave to file a counterclaim.  Genworth's proposed counterclaim alleges that TVPX breached the McBride settlement's covenant not to sue for released conduct.  As damages, Genworth seeks attorney's fees and costs incurred in defending against TVPX's claims.  The District Court held that Genworth's claim would be futile under Virginia law, which does not allow the recovery of attorney fees absent express statutory or contractual grant, neither of which exists here.  But it matters not whether Genworth would be entitled to damages if it cannot first demonstrate that TVPX violated the covenant not to sue for released conduct.  Because we cannot determine, on this record, whether TVPX's claims are premised on released conduct, we need not now decide whether Genworth's counterclaim is futile under Virginia law.