**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11347

————————————

EDIBLE IP, LLC,

EDIBLE ARRANGMENTS, LLC,

                    *Plaintiffs-Counter Defendants-Appellants,*

*versus*

1-800-FLOWERS.COM, INC.,

800-FLOWERS, INC.,

                    *Defendants-Counter Claimants-Appellees.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-02405-VMC

————————————

24-11347                 Opinion of the Court                 1

Before JORDAN, NEWSOM, Circuit Judges, and CORRIGAN,* District Judge.

PER CURIAM:

This case continues a business dispute that began more than a decade ago. Edible IP, LLC ("Edible"), and 1-800-Flowers.com, Inc. ("18F"), compete by selling gift products with fresh fruit. In 2016, they agreed to settle two lawsuits. Edible has now sued again. In the current case, 18F sought summary judgment, which the district court granted, finding most of Edible's claims involved conduct released by the 2016 Settlement Agreement and barred by res judicata. The district court also granted summary judgment on Edible's remaining claim for breach of the Settlement Agreement.

After carefully considering the issues, and with the benefit of oral argument, we reverse the district court's summary judgment.[1]

One way Edible and 18F compete is by paying search engines to display their ads when certain search terms are used. This practice is known as keyword bidding. Edible argued, in the earlier litigation and here, that 18F's keyword bidding practices infringed

---

* The Honorable Timothy J. Corrigan, United States District Judge for the Middle District of Florida, sitting by designation.

[1] "We review the district court's summary judgment *de novo*, viewing the facts and drawing all reasonable inferences in the light most favorable to the non-moving party." *Whitesell Corp. v. Electrolux Home Prods., Inc.*, 2025 WL 2538638, *1, __ F.4th __ (11th Cir. Sept. 4, 2025) (citation modified). "Further, we review a district court's interpretation of a contract *de novo*." *Id.*

on Edible's trademarks.[2] We do not address the merits of the trademark infringement claims because the primary issue for us is interpretation of the scope of the 2016 Settlement Agreement.[3] We focus on three paragraphs from the Settlement Agreement that bear on keyword bidding.

In Paragraph 3, 18F agreed it would not engage in certain "prohibited conduct." Settlement Agreement at 3, Dkt. No. 17-2.[4] However, this prohibited conduct paragraph specifically excluded keyword bidding because keyword bidding was covered in Paragraph 5. *Id.* at 4 ("[T]his Paragraph does not apply to the bidding on, purchase or use of keywords to trigger online advertising by [18F], which is separately addressed in Paragraph 5 below.").

In Paragraph 5, 18F agreed to "seek approval from the Federal Trade Commission" to stop specified keyword bidding. *Id.* If the FTC approved, 18F would stop the specified keyword bidding, but if "the FTC does not approve such request, this [P]aragraph

---

[2] Edibles argues infringement occurs when 18F bids on and purchases terms associated with Edible products, such as "Edible," "Edible Arrangements," and "Do Fruit." *See* Order Granting Mot. for Summary Judgment at 4, Dkt. No. 377.

[3] The parties agree the Settlement Agreement is governed by Georgia law. Accordingly, we apply Georgia contract law. *TheraTx, Inc. v. Duncan*, 234 F.3d 1240, 1245 (11th Cir. 2000).

[4] Citations are to the Settlement Agreement, which has been filed under seal. The paragraphs of the Settlement Agreement cited here are also quoted in the Court's Order Granting Defendant's Motion to Dismiss and Motion for More Definite Statement at pages 3–5, Dkt. No. 39, which is not sealed.

shall be null and void and shall have no force or effect." *Id.* at 5. It is undisputed that FTC approval never happened.

Paragraph 14 released "any claims, liabilities, causes of action, and suits . . . in law or in equity, whether known or unknown, which [Edible] now has, has had, or may hereafter claim to have had by reason of any matter, act, omission, cause, or event whatsoever *arising out of any facts and matters occurring prior to the execution of this Agreement that were asserted or could have been asserted*" in the litigation between the parties. *Id.* at 4–5 (emphasis added).

Thus, Paragraph 3 specifically excluded keyword bidding from "prohibited conduct;" Paragraph 5, which does address keyword bidding, is "null and void," because the FTC never gave the required approval; and Paragraph 14 limits the release of claims to "matters occurring prior to the execution of" the Settlement Agreement. The upshot of this is that while the Settlement Agreement releases 18F from liability for the keyword bidding claims through the date of the Settlement Agreement, it does not prohibit Edible from bringing claims against 18F based on future keyword bidding which post-dated the Settlement Agreement. The district court agreed: "[Edible] argues and the Court agrees that the plain language of the 2016 Settlement Agreement is clear that the Parties did not intend to release all future, unknown claims accruing after the effective date." Order Granting Mot. for Summary Judgment at 19, Dkt. No. 377; *cf. Dennis v. City of Atlanta*, 751 S.E.2d 469, 472 (Ga. Ct. App. 2013) (citing *U.S. Anchor Mfg. v. Rule Indus.*, 443 S.E.2d

833, 835 (Ga. 1982)) (Georgia law allows release of future claims "provided such intent is clearly expressed in the release.").

However, the district court then determined that the keyword bidding in this case, which post-dated the Settlement Agreement, was not a future claim but rather was a "continuation of the same conduct at issue" in the earlier litigation and therefore "covered by the Release" in the Settlement Agreement. Order Granting Mot. for Summary Judgment at 20, Dkt. No. 377. In doing so, it relied on our decision in *In re Managed Care*, which also involved a dispute over whether claims were released by a settlement agreement. 756 F.3d 1222 (11th Cir. 2014).

In *In re Managed Care*, several years after settlement, some class members sued, bringing RICO, antitrust, and ERISA claims. *See id.* at 1227. Plaintiffs argued claims based on conduct after the settlement were not barred because those claims could not have been brought before the settlement. *Id.* at 1231. The defendant argued the claims were barred because the post-settlement conduct had also been released. *Id.* at 1231-32. We found the RICO and antitrust claims were barred because the conspiracy allegations were the same as those involved in the prior litigation, and the new claims were based on conduct alleged to be a "continuation" of the conspiracy. *Id.* at 1236. But we found the ERISA claims were not barred because those claims did not accrue until after the settlement was effective. *Id.* at 1237.

The district court concluded Edible's keyword bidding claims were like the RICO and antitrust claims in *In re Managed*

*Care*, representing a continuation of claims that had been released. We disagree. The procedural and factual scenarios in *In re Managed Care* are quite different from this case. But to the extent we can apply the teaching of *In re Managed Care* here, it favors Edible's position. The post-settlement keyword bidding activities are more like the ERISA claims from *In re Managed Care* (which were not barred) because each alleged keyword bidding infringement post-settlement represents a new claim. *See Marcel Fashions Grp. Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107, 109 (2d Cir. 2015) ("[A] suit claiming damages for prior [trademark] infringements does not bar a subsequent suit for damages for subsequent infringements.") (citation omitted).

Thus, under the plain terms of the Settlement Agreement, Edible's claims based on keyword bidding which post-dated the Settlement Agreement are not released by the Settlement Agreement.

The determination that the Settlement Agreement did not release claims based on post-settlement keyword bidding is also critical to application of res judicata. Res judicata requires the prior decision (1) be from a court of competent jurisdiction, (2) be final, (3) involve the same parties, and (4) involve the same causes of action. *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1325 (11th Cir. 2020).

The parties dispute whether the fourth factor is satisfied. Typically, the fourth factor assesses "whether a case arises out of the same nucleus of operative facts, or is based upon the same

factual predicate, as a former action . . . ." *Id.* (citation omitted). That analysis, however, is modified when dismissal of the prior case is based on a settlement agreement.[5] *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288-91 (11th Cir. 2004) (when "dismissal [is] based on a settlement agreement," res judicata principles are modified "to the matters specified in the settlement agreement, rather than the [operative] complaint."). Here, the scope of res judicata is "controlled by the Settlement Agreement into which the parties entered." *Id.* at 1288.[6] Because we have already concluded that the Settlement Agreement did not release claims based on keyword bidding occurring post-settlement, those claims are not barred by res judicata.

Edible's separate breach of contract claim alleged that 18F breached the Settlement Agreement by engaging in non-keyword bidding prohibited conduct. The district court granted summary judgment on the breach of contract claim but without addressing it either by name or with reasoning. *See* Fed. R. Civ. P. 56(a) ("The court should state on the record the reasons for granting or denying the motion."). Thus, its decision must be reversed.

---

[5] The 2016 Settlement Agreement was incorporated into a final dismissal with prejudice.

[6] When a party "signs a settlement agreement stating that only some claims will be precluded in the future, it is as if the [party] is preemptively waiving any potential *res judicata* defense he would have had as a result of the dismissal to which the parties consent under the agreement." *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004).

These sophisticated parties showed in the Settlement Agreement they knew how to address keyword bidding. If they had intended for the Settlement Agreement to release future acts of keyword bidding, they could have easily said so. But they did not. For the reasons stated, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.